Kevin D. JOHNSON, Appellant,

v.

The STATE of Texas, State.

No. 2–94–397–CR.

Court of Appeals of Texas, Fort Worth.

March 28, 1996.

Rehearing Overruled May 2, 1996.

Wes Ball, Scott Wisch, Ball, Hase & Wisch, Arlington, for appellant.

Tim Curry, Criminal District, Attorney; Betty Marshall and Chuck Mallin, Assistant Chiefs of the Appellate Section; C. James Gibson, Lance Evans and Tim Bednarz, Assistant District Attorneys, Fort Worth, for appellee.

Before DAY, DAUPHINOT and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

A jury found Kevin D. Johnson guilty of aggravated robbery with a deadly weapon and assessed his punishment at twenty-eight years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a fine of $2,500. By five points of error, Johnson challenges the sufficiency of evidence, the court's failure to order production of a victim impact statement, the prosecutor's jury argument, and the admission of a knife as demonstrative evidence. We affirm the trial court's judgment.

In his first point of error, Johnson contends that the evidence was insufficient to show that the knife used was a deadly weapon, and that the court erred by allowing the case to go to the jury. The indictment charged Johnson with the following:

[I]ntentionally and knowingly, while in the course of committing theft of property and with intent to obtain and maintain control of said property, threaten and place George Springer in fear of imminent bodily injury and death, and the Defendant did then and there use and exhibit a deadly weapon, to wit: a knife, that in the manner of its use and intended use was capable of causing death and serious bodily injury.

During his morning drive to work, George Springer stopped about 6:20 a.m. at a Diamond Shamrock station on Eighth Avenue near Rosedale in Fort Worth and was robbed after pumping gasoline into a five-gallon can. The robber came from behind Springer, cut open his back pocket, and took his wallet, cutting Springer's hip in the process. While the robber's left hand took the wallet, Springer could see the robber's right hand grasping a jackknife or pocket knife with "about a three-inch blade." Springer testified:

I acted impulsively. I was in fear for my life. I grabbed at the knife arm, the knife hand, and my hand was cut, and so I turned and grabbed him physically. I was hoping to get behind him and keep the knife away from me, and we fell to the ground and struggled. I called for help, and I was attempting to restrain him, and he struck me with the knife in the left thigh, and we continued to struggle and he struck me in the side of the head with something and I think it was his knee. We were struggling, rolling there, and he struck me a second time in the right thigh. About that time, the young lady from the Diamond station came out with a pistol, and I released him and he ran and she fired, and he kept on running and a Frito–Lay man was there filling up the racks with his product.

About 6:30 a.m., Charles Deayon was driving past the station on his way home from working as a uniformed and armed private security guard. He heard a gunshot and looked and saw a man kneeling beside a van at the station. At trial, he identified Johnson as that man. He saw Johnson run from the station, chased on foot by another man to

whom the station's female attendant had handed a revolver. Deayon gave chase in his car and apprehended and handcuffed Johnson at gunpoint near the station. He saw blood on Johnson's hands, but his hands did not appear to be injured. Springer came to them, identified Johnson as "the one that held me up," and recovered his wallet, which contained about $850 and credit cards. The cash was covered with blood. Paramedics then took Springer to Harris Hospital where a physician treated and sutured his wounds and released him.

The police arrived at the Diamond Shamrock station and took custody of Johnson, but no knife was found. Deayon's testimony includes the following exchange on direct examination by the prosecutor:

Q. There are a lot of trees and open area in that area just to the side and back of the store?

A. Yes, sir.

Q. A lot of area where somebody could have tossed a knife?

A. There's a lot of area back there where someone could toss anything back there. At that particular time, the area was pretty green and everything was in bloom, so you could toss anything in there and it would get lost.

The Penal Code defines a deadly weapon as:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX.PENAL CODE ANN. § 1.07(a)(17)(A), (B) (Vernon 1994).

▅ Therefore, the sufficiency of evidence in this case to show that the knife used was a deadly weapon is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied* 469 U.S. 892, 105 S.Ct. 268, 83

L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson,* 819 S.W.2d at 846.

▅ In reviewing the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Emery v. State,* 881 S.W.2d 702, 705 (Tex. Crim.App.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). This standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). The standard for review is the same for direct and circumstantial evidence cases. *Geesa v. State,* 820 S.W.2d 154, 158–62 (Tex.Crim.App.1991). This is a circumstantial evidence case because the knife that cut Springer was never found.

Johnson argues that because Springer's wounds did not cause serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ, or a substantial risk of death, he did not suffer "serious bodily injury" TEX.PENAL CODE ANN. § 1.07(17) (Vernon 1994). Johnson contends that Springer's wounds were only "bodily injury," which the Texas Penal Code defines as "physical pain, illness, or any impairment of physical condition." TEX.PENAL CODE ANN. § 1.07(8) (Vernon 1994).

The State relies on *Brown v. State,* 716 S.W.2d 939, 947 (Tex.Crim.App.1986) for the proposition that we must view the evidence in the light most favorable to the jury's verdict to determine whether the circumstantial evidence, which includes Springer's description of the knife and the circumstances of its use, entitled the jury to conclude that the knife used was a deadly weapon. *Id.* The

State argues that its proof met the burden imposed by *Rogers v. State*, 877 S.W.2d 498, 500 (Tex.App.—Fort Worth 1994, pet. ref'd). Where wounds do not result in serious bodily injury or death, *Rogers* requires the State to prove (1) that the thing used as a weapon was capable of causing death or serious bodily injury, and (2) the weapon was displayed or used in a manner indicating an intent to cause death or serious bodily injury. *Id.* at 500.

■ Because criminal intent is an intangible, it can be proved only by circumstantial evidence. *Arnott v. State*, 498 S.W.2d 166, 177 (Tex.Crim.App.1973) (op. on reh'g). Although a knife may not be a deadly weapon per se, a jury may consider all of the facts of the case, and the State can prove, even without expert testimony, that a particular knife is a deadly weapon by showing its size, shape, sharpness, the manner of its use, and its capacity to produce death or serious bodily injury. *Blain v. State*, 647 S.W.2d 293, 294 (Tex.Crim.App.1983). An intent to inflict serious bodily injury or death may be shown by evidence of assertive conduct by an attacker. *Lockett v. State*, 874 S.W.2d 810, 815–16 (Tex.App.—Dallas 1994, pet. ref'd).

Springer testified that during the struggle in which he was cut various times by Johnson, he feared for his life. He described the knife Johnson used against him as having a three-inch blade. Springer also identified a knife marked and admitted into evidence for demonstrative purposes only as having a blade about the same length and width, with a similar shape, as the one he said Johnson used. In admitting the demonstrative knife as State's Exhibit No. 1, the court responded to Johnson's request for a limiting instruction by saying:

All right. Very well. At this time, the Court will overrule the objections posed to State's Exhibit No. 1 and will admitted [sic] State's Exhibit No. 1 for demonstrative purposes only.

. . . .

Ladies and gentlemen, this exhibit has been admitted for demonstrative purposes only to aid you, if it does, in listening to the testimony of the witness. So this has not been admitted to show that it's the actual weapon that's been testified about, but it's been admitted for demonstrative purposes only.

Because Johnson's first, fourth and fifth points of error are interrelated we will complete our evaluation of point number one by addressing points four and five.

■ In his fourth point, Johnson asserts that the court erred in admitting as State's Exhibit No. 1 a knife resembling the attacker's knife about which Springer testified. When a key issue in a case is whether a knife was used in a deadly manner, a knife substantially like the one allegedly used in the attack is admissible as demonstrative evidence. *Posey v. State*, 763 S.W.2d 872, 875 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). A key issue in Johnson's case is whether the knife used in the robbery was used in a deadly manner, and because the original knife would have been admissible if available, the demonstrative knife with its blade of similar length and size was admissible. *Id.* At trial, Springer properly identified the length and size of the demonstrative knife's blade, comparing it as substantially the same as the one allegedly used by his assailant. We hold that the trial court did not err by admitting the demonstrative knife as evidence. *Id.*

Johnson complains in his fifth point that the court erred by denying Johnson's request for a limiting instruction that would admonish the jury that they were entitled to consider only the blade portion of State's Exhibit No. 1 and not its handle.

Before State's Exhibit No. 1 was offered for demonstrative purposes, Springer had testified that the blade of his attacker's knife was about three inches long. He did not describe its handle. Common sense dictates that if he saw a blade projecting three inches beyond Johnson's hand, he was necessarily holding the knife by some sort of handle. Regardless of the size, style, or length of the handle on the knife with which Springer was attacked, the evidence is clear that the handle was sufficient to enable the assailant to wield the knife in a manner that stabbed and cut Springer and made him fear for his life.

Thomas Kimball, a Fort Worth Police Officer who came to the Diamond Shamrock station to investigate the robbery, testified for the prosecution. He testified that during his twenty two years' experience as a police officer, he had been called to the scene of situations involving injuries or wounds made by sharp objects or knives. He examined State's Exhibit No. 1 and testified that a *blade* of that type was *capable* of causing death or serious bodily injury.

■ Based upon the evidence we have reviewed in connection with points of error one, four, and five, we hold that a rational jury could have found that the testimony of Johnson's assertive conduct with a knife, i.e., stabbing Springer several times during their struggle, proved beyond a reasonable doubt that Johnson used a knife against Springer in a manner indicating he intended to cause death or serious bodily injury to Springer. We hold that a rational jury could have found from the evidence that the knife, as allegedly used, was capable of causing death or serious bodily injury, and we hold that the evidence was sufficient to establish that the knife Johnson used was a deadly weapon. Points of error one, four, and five are overruled.

Johnson's second point of error asserts that the court erred in refusing to order the State to produce the victim's impact statement for use in cross-examination as required by Texas Rule of Criminal Evidence 614, a pertinent portion of which states:

(a) **Motion for Production.** After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state ... to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

TEX.R.CRIM.EVID. 614.

Before trial, Johnson's motion for production of witness statements so they could be used for cross examination pursuant to Rule 614 was denied. After Springer testified at trial, Johnson's attorney renewed that request to the court, and it was denied.

To Johnson's second point of error, the State replies that the trial court was not required to order discovery of the victim impact statement because Springer's stepson prepared it, and it was not signed or otherwise adopted or approved by Springer as required by TEX.R.CRIM.EVID. 614(f). Out of the jury's presence, Springer was asked about the victim impact statement and his testimony included this:

[PROSECUTOR:] Q. This piece of paper that the Judge has handed to you, do you recognize it?

[SPRINGER:] A. I don't think—I don't remember seeing it, no.

. . . .

THE COURT: Do you recognize any portion of this document?

THE WITNESS: That was filled out by my stepson for me.

THE COURT: All right. And it has your stepson's signature here; is that correct?

THE WITNESS: Yes.

THE COURT: You didn't sign this in any way?

THE WITNESS: I don't think I recognized my signature. I might have signed it for him—my signature isn't on there.

. . . .

[DEFENSE ATTORNEY:] Q. Mr. Springer, you said it was your stepson that actually filled that out; is that correct?

A. Yes.

Q. Did you help him in providing the information?

A. He probably asked me questions at the time. I don't recall.

Q. And he basically wrote down your answers; is that correct?

A. I would say yes.

Q. And that document concerned this robbery matter, didn't it?

A. Repeat that.

Q. That document concerned the effect on you from the robbery?

A. Yes.

Earlier, the trial court had completed an *in camera* inspection of the alleged victim

impact statement and had denied Johnson's pretrial motion for production, with the following ruling:

> The Court has made an examination of the victim information sheet and the victim impact statement, and the Court has determined that there is no exculpatory or Brady material contained within the victim impact statement. And the Court has also noted that the victim impact statement or the information sheet had not been completed by the victim in this offense, who is alleged to be George Springer, but has been completed by a close relative of the victim, a stepson of the victim. So the Court will find that this is not a statement of the victim and the victim impact statement will not be available to the Defense for purposes of cross-examination.

The comment about "Brady material" referenced the principle that an accused is denied due process where the State withholds evidence that is favorable to the accused on the issue of guilt or innocence. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Following Springer's testimony and related arguments by the attorneys, all done outside the jury's presence, the trial court ruled:

> The Court has previously made a ruling, and I'll reiterate it at this time, that there is no Brady or exculpatory material contained within the document. It does not appear to be a statement from the witness who has testified, and the Court will rule that this [victim impact statement] does not fall under Rule 614, and will reseal the document unless there is any other need for it.

■ We hold that the ruling was in error. Before a victim testifies at trial, his impact statement is not discoverable by the accused unless the trial court determines that the statement contains exculpatory material. TEX.CODE CRIM.PROC.ANN. art. 56.03(g) (Vernon Supp.1996). As soon as the victim has testified at trial, the accused is entitled to inspect the victim's impact statement, even though it does not contain exculpatory material. *Enos v. State*, 889 S.W.2d 303, 305 (Tex.Crim.App.1994); *Gaskin v. State*, 172 Tex.Crim. 7, 353 S.W.2d 467, 469 (1961) (op.

on reh'g); *Enos v. State*, 909 S.W.2d 293, 295 (Tex.App.—Fort Worth 1995, pet. filed) (op. on reh'g). Generally, a "statement" of a witness is defined to include a written statement made by the witness that is signed or otherwise adopted or approved by him. TEX. R.CRIM.EVID. 614(f)(1).

■ We hold that the statement prepared by Springer's stepson, upon information supplied by Springer, was the victim impact statement in this case, and that Springer's answers to the defense attorney's cross-examination questions were an adoption of the victim impact statement by Springer. We hold that the statement was discoverable by the defense after Springer had completed his testimony in the case, and the court should have ordered the State to produce it.

■ Nevertheless, a review of the record reveals that Johnson has not shown that the denial of discovery harmed him by encumbering his cross-examination and possible impeachment of Springer or another witness. For us to examine the sealed victim impact statement and determine whether such harm was done, it was Johnson's burden either to make the statement a part of the appellate record or to show that he was denied the opportunity to make the statement a part of the appellate record. *Guerra v. State*, 760 S.W.2d 681, 694 (Tex.App.—Corpus Christi 1988, pet. ref'd). Because the record does not include the statement or reflect that Johnson was denied the opportunity to make it a part of the appellate record, it is not preserved for our review. *Id.* Point of error number two is overruled.

In his third point of error, Johnson asserts that the trial court erred by not sustaining his objection to the following final jury argument by the State.

> Now, if you would look at the charge, and the Judge has already read it to you, you know that it's not important the types of wounds that Mr. Springer actually did receive. That's beside the point, because—
>
> [DEFENSE ATTORNEY]: Excuse me, Your Honor. I'll object. I don't believe that's a correct statement of the law.

That's part of the evidence. It's not important the type of wounds he received? I don't believe—he said that's what the Court's Charge says.

The objection was overruled, and Johnson argues that the jury was entitled to consider the nature of Springer's wounds as direct evidence in determining whether the weapon used was a deadly weapon. We agree, although we do not agree that by overruling the objection, the trial court precluded the jury from considering the nature and extent of Springer's wounds in the context of whether the knife blade was a deadly weapon.

Johnson argues that because none of Springer's vital organs were stabbed in the attack and because he did not suffer serious bodily injury or death, jurors could infer that the weapon used against him was not deadly. In support of this proposition, Johnson relies on *Williams v. State*, 575 S.W.2d 30, 32 (Tex.Crim.App. [Panel Op.] 1979). *Williams* holds that a knife is not a deadly weapon per se, and in deciding whether a knife is *capable* of producing serious bodily injury and therefore is a deadly weapon, a jury is free to consider *all* of the facts of the case, *including* any *wounds* inflicted by the assailant. *Id.*

■ *Williams* does not compel the conclusion that an absence of "serious" wounds on a victim singularly precludes classifying an assailant's knife as a deadly weapon. While *Williams* makes clear that a jury is entitled to consider the nature and extent of wounds inflicted on a victim, it also makes clear that wounds alone, even if superficial, are not the determinant of whether the attacker's use of a particular knife brought it within the definition of a deadly weapon. The nature and extent of a victim's knife wounds are only a link in the chain of evidence as to whether a knife's use made it a deadly weapon. The evidentiary linchpin necessary for a jury's decision that the knife used was a deadly weapon is evidence proving that, in the manner it was used, the knife blade was *capable* of producing death or serious bodily injury. *Id.* at 32. In other words, although a jury is entitled to consider the nature or extent of wounds, the focus must be on the knife's capability, in the manner it was used, to inflict death or serious bodily injury.

In its simplest terms, Johnson's argument implies that jurors could reasonably conclude that a person who is stabbed or slashed several times with a knife's three-inch blade will not suffer serious bodily injury or death because, even if used in that manner, a three-inch blade is not capable of inflicting such injury or death. Johnson's argument is that the nature and extent of Springer's wounds prove his point. We are not persuaded.

Springer's testimony did not present an abstract image of the knife as an inanimate object, but rather as a weapon that was cutting and stabbing him because of the manner in which Johnson used it as they fought. Springer did not describe himself to the jury as being passive during the attack, and Johnson's use of the knife while they fought was not unimpeded. Springer was cut and stabbed during the struggle while trying to deflect and fend off Johnson's attack. The evidence is that in spite of those deflections, the attacker was indiscriminately stabbing and slashing Springer. No evidence suggests that Johnson used the knife with deliberate precision to avoid stabbing Springer's arteries or vital organs. No evidence suggests that if, during the struggle, the three-inch blade had struck a vital organ or a major artery in the thigh or elsewhere that serious bodily injury or death could not have occurred. Springer told jurors that while the knife was being used in the manner he described, he feared for his life, and Police Officer Kimball told jurors that a blade with the size and shape described by Springer was capable of causing serious bodily injury or death.

The State contends that Johnson's third point of error asks us to isolate a part of the prosecutor's argument out of its context. We agree.

The court's charge to the jury separately defines the offenses of robbery and aggravated robbery, which are identical except that an aggravated robbery is defined as a robbery in which the perpetrator uses or exhibits a deadly weapon. *Compare* TEX.PENAL CODE ANN. § 29.02(a) (Vernon 1994) *with*

TEX.PENAL CODE ANN. § 29.03(a) (Vernon 1994). The prosecutor was entitled to explain to the jury the separate offense of robbery, for which actual wounds or use of a deadly weapon are not elements. Once the objection was overruled, the prosecutor resumed by saying:

[PROSECUTING ATTORNEY]: It's right here on the front page of the charge, ladies and gentlemen. Robbery is when this man intentionally or knowingly threatened Mr. Springer, placed him in fear that he could receive imminent bodily injury or death. The cuts weren't even necessary for the robbery to take place. Unfortunately, that's what happened to Mr. Springer. [Emphasis omitted.]

In context, apparent from the prosecutor's continued argument after Johnson's objection was overruled, the challenged remarks were not improper. We hold that the court did not err by overruling Johnson's objection. The third point of error is overruled.

The judgment of the trial court is affirmed.