COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-284-CR

DORA EMILIA GARZA APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

Dora Emilia Garza appeals from her conviction for aggravated assault with a deadly weapon.  In two points, appellant argues that the evidence is legally and factually insufficient to show that she used or exhibited a deadly weapon during the assault.  The State concedes that the evidence is factually insufficient to support a deadly weapon finding but argues that it is legally sufficient.  We reverse and remand.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
(footnote: 2)
 When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.
(footnote: 3) We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder’s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust.
(footnote: 4)  
 

A knife is not a deadly weapon per se,
(footnote: 5) but it may be a deadly weapon if in the manner of its use or intended use it is capable of causing death or serious bodily injury.
(footnote: 6)  “Serious bodily injury” means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.
(footnote: 7)  Factors considered in determining whether a knife is capable of causing death or serious bodily injury include the physical proximity of the parties, the threats or words used by the defendant, the size, shape, and sharpness of the weapon, the manner in which the defendant used the weapon, and the wounds inflicted on the victim.
(footnote: 8)  Expert testimony generally is not required,
(footnote: 9)  and the actual knife used during the commission of the offense need not be introduced into evidence if a witness is able to testify about the knife and the manner in which it was used.
(footnote: 10)
 In this case, the evidence shows as follows:

At 1:00 a.m. on May 14, 2005, Bianca Vasquez drove herself and Mariana Vidana, the victim, from their friend Victor’s house to a Jack-in-the-Box restaurant.  When Bianca attempted to back out of the house’s driveway, appellant, an acquaintance of Mariana’s, stood in the middle of the street and blocked their progress.  Mariana noticed that appellant had a knife “like a pocketknife” in her hand and was “playing around” with it.  Mariana did not feel threatened, because she “didn’t have a problem” with appellant and did not see any reason why appellant would wave a knife at her.  Appellant eventually moved at Bianca’s request, and Bianca drove off.  When Bianca stopped at a stoplight, however, appellant got out of the car behind Bianca’s and ran towards Bianca’s car.  Mariana did not see a knife in appellant’s hand, and Bianca drove off just as appellant reached the back passenger door of their car. 

When Bianca entered the Jack-in-the-Box parking lot, the vehicle that had been at the stoplight pulled in front of Bianca’s car and blocked her forward progress.  A girl named Evelyn got out of the car, went to Mariana’s open passenger window, and began punching her in the face.  Mariana blocked Evelyn’s punches with her hands.  She testified that she was scared when Bianca’s car was blocked in and then angry because Evelyn had punched her. Appellant then moved Evelyn out of the way and began stabbing Mariana with a pocketknife.  After attempting unsuccessfully to roll up her window, Mariana leaned towards the driver’s side of the vehicle in order to avoid being stabbed, thereby exposing her right leg.  Bianca was eventually able to drive off, but not before Mariana had been stabbed five times in her right leg and once in her right arm.  During the assault, appellant and Evelyn also swore at and hit Mariana with their fists, and Anthony Loya, another friend of appellant’s, held Mariana’s car door shut so she could not escape the stabbing.  Mariana testified that she “felt the biggest [of the wounds]; I just felt it go through me.”  She further testified that the wounds caused her pain. 

Mariana called her mother, who took her to the hospital for medical treatment.  Police corporal Seth Archer went to the hospital in response to the stabbing report and interviewed Mariana.  Corporal Archer testified that Mariana had one main stab wound on her right thigh, as well as four or five other stab wounds.  He further testified that he had seen at least fifty other stabbing victims and that he “definitely wouldn’t call the one major wound superficial” because “[i]t looked like it hurt pretty bad.” 

Mariana’s hospital records were also admitted into evidence.  The records state that Mariana’s wounds were superficial and that she was suffering mild or moderate pain (4 on a scale of 1-10) and mild distress.  The bleeding was controlled with a 4x4 ace bandage, but three of the wounds required stitches.  Mariana was given pain medication and excused from physical activity for two weeks. 

There is no evidence that appellant’s stabbing of Mariana caused her serious bodily injury, i.e., that the wounds inflicted created a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.
(footnote: 11)  Nonetheless, the knife was obviously sharp because appellant stabbed Mariana with it repeatedly, and three of the wounds required stitches.  Thus, the jury reasonably could have inferred that the knife was 
capable
 of causing serious bodily injury, particularly to vulnerable parts of the body, such as the neck and face.
(footnote: 12)
 Further, appellant attacked Mariana with the knife at close range while her friend prevented Mariana from getting out of the car.  Although appellant did not stab Mariana in the neck or face, there is evidence that this was at least partially due to the fact that Mariana covered her face with her hands to protect it and leaned as far away from appellant as possible.  The assault ended only when Bianca was able to drive off.

An intent to inflict serious bodily injury or death may be shown by evidence of the attacker’s assertive conduct.
(footnote: 13)  Thus, the jury reasonably could have inferred from appellant’s assertive conduct that she intended to inflict serious bodily injury on Mariana, even if she did not succeed in doing so.
(footnote: 14) Accordingly, viewing all the evidence in the light most favorable to the verdict, we hold that it is legally sufficient to support the jury’s finding that appellant used or exhibited a deadly weapon in assaulting Mariana.
(footnote: 15)  Therefore, we overrule appellant’s first point.

We now turn to appellant’s factually sufficiency challenge.  Even though the State has conceded that the evidence is factually insufficient to support the jury’s deadly weapon finding, we cannot reverse and remand unless we explain why the evidence is factually insufficient.
(footnote: 16)
 Here, the knife was not introduced into evidence, and Mariana could not describe it except to say that it looked “like a pocketknife.”  Bianca never saw the knife.  Further, appellant did not verbally threaten Mariana,
(footnote: 17) and Mariana never testified that she feared that appellant would cause her serious bodily injury or death.  Mariana testified only that she felt “afraid” when the car in which appellant was riding blocked Bianca’s car in the Jack-in-the-Box parking lot, and her hospital records describe her distress as “mild.”  Finally, although Corporal Archer opined that Mariana’s most serious wound was “definitely” not superficial, Mariana’s hospital records state that her wounds were superficial and that they caused her only mild or moderate pain.

Viewing all the evidence in a neutral light, we hold that, although it is legally sufficient to support the jury’s deadly weapon finding, it is nevertheless so weak that the finding is clearly wrong and manifestly unjust.
(footnote: 18)  Therefore, we hold that the evidence is factually insufficient to support the deadly weapon finding, and we sustain appellant’s second point.

Having sustained appellant’s second point, we reverse the trial court’s judgment and remand the case to the trial court for a new trial. 

PER CURIAM

PANEL F:  CAYCE, C.J.; HOLMAN and GARDNER, JJ.

DO NOT PUBLISH 

Tex. R. App. P.
 47.2(b)

DELIVERED:   June 28, 2007 
   

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

3:
Watson v. State
, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).

4:
Watson
, 204 S.W.3d at 414-15, 417; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

5:
Thomas v. State,
 821 S.W.2d 616, 620 (Tex. Crim. App. 1991).

6:
Tex. Penal Code Ann.
 § 1.07(a)(17)(B) (Vernon Supp. 2006).

7:
Id.
 § 1.07(a)(46).

8:
Brown v. State,
 716 S.W.2d 939, 946 (Tex. Crim. App. 1986);
 Bailey v. State,
 46 S.W.3d 487, 491-92 (Tex. App.—Corpus Christi 2001, pet. ref’d); 
Garcia v. State,
 17 S.W.3d 1, 4-5 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).

9:
English v. State,
 647 S.W.2d 667, 669 (Tex. Crim. App. 1983).

10:
Morales v. State,
 633 S.W.2d 866, 868-69 (Tex. Crim. App. [Panel Op.] 1982); 
Billey v. State,
 895 S.W.2d 417, 420 (Tex. App.—Amarillo 1995, pet. ref’d).

11:
See
 
Tex. Penal Code Ann.
 § 1.07(a)(46) (defining serious bodily injury to include these things).

12:
See Denham v. State,
 574 S.W.2d 129, 131 (Tex. Crim. App. 1978) (“Appellant contends that a razor is not . . . a deadly weapon.  We are inclined to believe that all mankind know that death can be inflicted by a razor in the hands of a grown man.”) (quoting 
Acosta v. State,
 77 Tex. Crim. 643, 179 S.W. 870, 871 (1915)); 
Johnson v. State,
 919 S.W.2d 473, 477 (Tex. App.—Fort Worth 1996, pet. ref’d) (holding that no serious bodily injury need be proven, but only the knife’s capabilities and the defendant’s intent).  Appellant’s reliance on 
Danzig v. State,
 546 S.W.2d 299, 302 (Tex. Crim. App. 1977), is misplaced, because the court of criminal appeals has overruled that opinion.  
See Denham,
 574 S.W.2d at 131.

13:
Johnson,
 919 S.W.2d at 477; 
see Alvarez v. State,
 566 S.W.2d 612, 614 (Tex. Crim. App. [Panel Op.] 1978) (“[T]he essential question is whether there is sufficient evidence to show that the appellant used the knife or intended to use the knife in such a way that it was capable of causing death or serious bodily injury.”) (internal quotation marks omitted).

14:
See Alvarez,
 566 S.W.2d at 614
; Johnson,
 919 S.W.2d at 477.

15:
The cases on which appellant relies are inapposite because none of the assailants actually wounded the respective complainants with the knives at issue.  
See Blain v. State,
 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); 
Beller v. State,
 635 S.W.2d 739, 740 (Tex. Crim. App. [Panel Op.] 1982); 
Turner v. State,
 688 S.W.2d 698, 701 (Tex. App.—Houston [1st Dist.] 1985), 
vacated on other grounds,
 720 S.W.2d 533 (Tex. Crim. App. 1986).

16:
Goodman v. State
, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001);
 
Johnson
, 23 S.W.3d at 7.
 

17:
Bianca testified only that appellant “cussed” at Mariana.

18:
See Watson
, 204 S.W.3d at 414-15, 417; 
Johnson
, 23 S.W.3d at 11.