# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00416-CR

**John Charles Alexander aka Bobby Ray Miller, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D-1-DC-10-904039, HONORABLE FRED A. MOORE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found John Charles Alexander, aka Bobby Ray Miller, guilty of aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2) (West 2003). The jury assessed Alexander's punishment at thirty years in prison.[1] Alexander appeals his conviction, challenging (1) the sufficiency of the evidence to establish that the knife he displayed was a deadly weapon, (2) the sufficiency of the evidence to establish that he threatened David Jalufka with imminent bodily injury, and (3) the trial court's failure to include the lesser-included offense of attempted aggravated assault in the jury charge. We affirm the trial court's judgment of conviction.

---

[1] Alexander's conviction was for a second degree felony, enhanced as habitual. *See* Tex. Penal Code Ann. §§ 22.02(b), 12.42(b) (West 2003).

## BACKGROUND

In the early morning hours of December 29, 2009, David Jalufka and some friends were celebrating at Shiner's Saloon in Austin, Texas.[2]  A group of female customers approached Jalufka, one of the bar's owners, and complained that Alexander, a customer, was bothering them. Jalufka testified that he then approached Alexander and asked him to leave the bar, informing Alexander that he could either leave on his own or be escorted out.  Alexander said that he would prefer to be escorted out.  Jalufka then pushed Alexander toward the door to the stairs that led out of the building.[3]  Jalufka testified that Alexander fell down at the top of the stairs, but did not fall down the stairs.

Danny Schuh, a friend of Jalufka's who was also in the bar, testified that he saw Jalufka talking to Alexander.  Schuh said that Jalufka tried to pull Alexander out of the bar and that there was a struggle to get him to the door.  Schuh noticed a backpack on the ground that he thought belonged to Alexander and picked it up before following Jalufka and Alexander down the stairs. Schuh testified that it appeared Jalufka was trying to let Alexander go down the stairs on his own accord, but that Alexander would not leave.

Jalufka struggled with Alexander, trying to get him down the stairs.  Jalufka testified that they exchanged obscenities as they made their way to the bottom landing.  Schuh testified that when they were near the bottom of the stairs, Alexander said, "you guys think you're tough."  Schuh saw Alexander raise a hand and Schuh pushed on Alexander's shoulders, forcing him through the door.  Alexander lost his balance and fell to the ground in front of the bar.  Schuh testified that

---

[2]  The facts recited herein are taken from the testimony and exhibits admitted at trial.

[3]  The bar is located on the second floor of the building.

2

Alexander then got up and continued to tell him and Jalufka that "[they] think [they're] tough." Jalufka testified that Alexander and Schuh were "talking shit," but could not remember exactly what was said. According to Jalufka, Alexander reached into his right pocket and pulled out a knife, at which point Jalufka jumped away and warned the people standing nearby that Alexander had a knife. Jalufka testified that he was standing about two feet away from Alexander when he saw the knife and that he was scared because he thought Alexander was going to cut him.

Charles Barr, another friend of Jalufka's, was outside smoking when the incident took place. He testified that he heard Alexander say that he was going to get a gun and come back and kill everyone. Barr testified that he saw Alexander hold an object up near his head, but that he could not tell at the time that the object was a knife. He stated that Alexander did not lunge or point the knife at anyone.[4]

Schuh also testified that Alexander made a threatening comment. He said that he heard Alexander say he was "going to come back and blaze this joint." While Schuh was also unable to see that the object in Alexander's hand was a knife, he did testify that he heard a click. Schuh testified that when he heard Jalufka say that Alexander had a knife, he grabbed Alexander's arm. Barr then pulled Alexander into a choke hold and the three men fell to the ground. Schuh and Barr held Alexander on the ground until the police arrived.

Alexander dropped the knife in the scuffle. Barr testified that a bystander put his foot on the knife and kept it on the ground a few feet away from them until the police arrived. Jalufka

---

[4] Schuh confirmed that Alexander did not point the knife at anyone. He stated that Alexander was about four feet away from Jalufka when Jalufka warned of the knife.

3

called 911 after his friends and Alexander hit the ground. Jalufka, Schuh, and Barr all testified that Alexander appeared to be intoxicated.

Sergeant Mike Barger, Officer Lonnie Cannon, and Officer Travis Beathard from the Austin Police Department responded to the call. Cannon and Beathard testified for the State at trial. Beathard testified that Barger was the first to arrive and that he and Cannon arrived shortly thereafter. When he arrived, Beathard observed that Barger was putting handcuffs on Alexander.

Beathard noticed a knife nearby and secured it. He testified that when he retrieved the knife, it was open. He described the knife as a box-cutter knife with a thumb-assisted blade that locked into place when it was opened. Both Beathard and Cannon testified that Alexander appeared intoxicated. He smelled of alcohol, was not steady on his feet, and had urinated on himself. They both testified that he appeared uninjured. The officers also testified that, between the two of them, they had spoken to Schuh, Barr, and Jalufka on the scene and that those men also appeared uninjured.

Alexander was charged with aggravated assault with a deadly weapon and a jury trial was held. At the close of the State's case, during an informal charge conference, Alexander requested that the jury charge include the lesser-included offenses of attempted aggravated assault and terroristic threat. The State objected to the terroristic threat charge, but did not object to the inclusion of attempted aggravated assault. The court said, "So I've got aggravated assault, attempted aggravated assault. The State doesn't have a problem with that."

The next day, after an indication that Alexander would rest without presenting any evidence, the court presented written copies of the jury charge to the parties for review. The court

4

specifically stated that the charge gave the jury the choice of "aggravated assault or not guilty." The court then asked if there were any requests or objections. Alexander renewed his request for the inclusion of the lesser-included offense of terroristic threat and added a new request that the court include the lesser-included offense of disorderly conduct. The court denied both requests and Alexander objected to the failure to include them. Alexander did not object to the omission of the lesser-included offense of attempted aggravated assault. The jury convicted Alexander of aggravated assault.

The jury found both of Alexander's enhancement paragraphs to be true and assessed a sentence of thirty years in prison.[5] Alexander now appeals, alleging that (1) insufficient evidence exists to support a finding that the knife he displayed was a deadly weapon, (2) insufficient evidence exists to support a finding that he threatened Jalufka with imminent bodily injury, and (3) the trial court erred in failing to include the lesser-included offense of attempted aggravated assault in the jury charge.

## STANDARD OF REVIEW

Alexander presents three points of error for review. The first and second points of error both challenge the sufficiency of the evidence at trial. These issues are subject to the *Jackson v. Virginia* standard of review. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (holding that *Jackson* is only standard that reviewing court should apply in reviewing

---

[5] Alexander's sentence was based on an enhancement as habitual for two prior felony convictions. These convictions were for murder, a first-degree felony, and robbery, a second-degree felony. *See* Tex. Penal Code Ann. §§ 19.02(b)-(c), 29.02(a)-(b), 12.42(b) (West 2003).

sufficiency of evidence); *see generally Jackson v. Virginia*, 443 U.S. 307 (1979). In looking at the sufficiency of the evidence, we "review[] the evidence in the light most favorable to the prosecution" to determine whether "*any* trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (citing *Jackson*, 443 U.S. at 319). Thus, we assume that the trier of fact resolved conflicts in testimony, weighed the evidence, and drew reasonable inferences in a manner that is consistent with the verdict. *Jackson*, 443 U.S. at 318; *see also Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

In reviewing a jury charge, we must consider whether any error was preserved by a proper objection at trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). If the error in the charge was objected to at trial, reversal is required as long as it was not harmless. *Id.* If the error was not preserved, we reverse only in the event of fundamental error. *Id.* Before reversing under either *Almanza* test, we must determine that there was an error in the charge. *Tolbert v. State*, 306 S.W.3d 776, 782 (Tex. Crim. App. 2010).

## DISCUSSION

### Knife as a Deadly Weapon

Alexander argues that the evidence presented at trial was not sufficient to support a finding that the knife he displayed was a deadly weapon because the State did not prove that Alexander intended to use the knife to cause death or serious bodily injury.

A knife is not a deadly weapon per se.  *See* Tex. Penal Code Ann. § 1.07(a)(17)(A) (West 2003); *see also Limuel v. State*, 568 S.W.2d 309, 311 (Tex. Crim. App. 1978) ("An ordinary pocket knife is not manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury.").  To establish that the knife used by a defendant is a deadly weapon, the State must show "that in the manner of its use or intended use [the knife] is capable of causing death or serious bodily injury."  Tex. Penal Code Ann. § 1.07(a)(17)(B).  The penal code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  *Id*. § 1.07(a)(46).

Alexander argues that, in addition to establishing that the knife itself is capable of causing death or serious bodily injury, the State also had the burden of showing that Alexander intended to use the knife to cause death or serious bodily injury.[6]  The plain language of section 1.07(a)(17)(B), however, "does not require that the actor actually intend death or serious bodily injury."  *McCain*, 22 S.W.3d at 503.  The State must only show that a defendant used or intended to use the knife in a manner that was *capable* of causing death or serious bodily injury.  *Id.*  The State can use evidence about the knife's capacity to cause death or serious bodily injury, its size and shape,

---

[6] In making this argument, Alexander relies primarily on two court of appeals cases, which included a requirement that the State show the defendant's intent to use the weapon to cause death or serious bodily injury.  *See Johnson v. State*, 919 S.W.2d 473, 477 (Tex. App.—Fort Worth 1996, pet. ref'd) (requiring showing that "the weapon was displayed or used in a manner indicating an intent to cause death or serious bodily injury"); *Lockett v. State*, 874 S.W.2d 810, 814 (Tex. App.—Dallas 1994, pet. ref'd) (imposing similar requirement).  The court of criminal appeals, however, has expressly stated that no such showing is needed.  *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

and its manner of use to establish that the knife is a deadly weapon without expert testimony. *Davidson v. State*, 602 S.W.2d 272, 273 (Tex. Crim. App. 1980).

The State presented the box-cutter knife at the trial. Barr and Beathard testified that the knife was capable of causing death or serious bodily injury. After Alexander took the knife out of his pocket, Schuh heard a click, indicating that the knife's blade was extended. When Beathard recovered the knife, the blade was still open. The State's witnesses testified that, while Alexander did not lunge at anyone, he was standing in relatively close proximity to Jalufka.[7] Schuh and Barr testified that Alexander made threats and refused to leave voluntarily, requiring Jalufka to forcibly remove him. Jalufka testified that he and Alexander had exchanged obscenities and that he had pushed Alexander in his effort to get him down the stairs.

Viewing this evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Alexander intended to use the knife in a manner that would be capable of causing death or serious bodily injury. Alexander's first point of error is overruled.

**Threat of Imminent Bodily Injury**

Alexander next argues that the State did not present sufficient evidence to support a finding that he intentionally or knowingly threatened Jalufka with imminent bodily injury because Alexander did not lunge or point the knife at Jalufka.

---

[7] Jalufka testified that he was about two feet away from Alexander when he pulled out the knife, while Schuh testified that Jalufka was about four feet away from Alexander at that time.

To establish that a defendant is guilty of assault by threat, the State must show that he "intentionally or knowingly threaten[ed] another with imminent bodily injury." Tex. Penal Code Ann. § 22.01(a)(2) (West 2003). "Intentionally" requires a showing of "a conscious objective or desire to engage in the conduct." *Id.* § 6.03(a) (West 2003). "Knowingly" requires a showing that the actor "is aware of the nature of his conduct or that the circumstances [surrounding his conduct] exist." *Id.* § 6.03(b). The trier of fact may infer intent from the acts, words, and conduct of the defendant. *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999).

Alexander argues that the State was required to prove that he intentionally or knowingly placed Jalufka in reasonable apprehension of imminent bodily injury. Unlike bodily-injury assault, which requires a specific result, assault by threat is conduct-oriented. *See Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008) (discussing that assault by threat "focus[es] upon the act of making a threat, regardless of any result that threat may cause"). It is an open question whether the State has to show that a complainant perceived the threat. *Olivas v. State*, 203 S.W.3d 341, 349 (Tex. Crim. App. 2006). The State does, however, need to present "some evidence of a threat being made to sustain a conviction of assault by threat." *Id*. The words of the defendant or the act of waving the knife in the air could be sufficient to create a threat. *Id*. at 349 n.40. The simple act of holding the knife overhead, on the other hand, is not enough to constitute a threat. *Id*.

In this case, the State presented evidence that Alexander intentionally threatened Jalufka. Barr testified that just prior to displaying the knife, Alexander had made comments indicating that he intended to come back and kill people. Schuh testified that Alexander said he

9

would "come back and blaze this joint." Jalufka and Schuh testified that Alexander was standing relatively close to Jalufka when Alexander extended the blade on the box-cutter knife. Beathard testified that the knife was open when he collected it. The affirmative act of opening the knife in the midst of a confrontational encounter suggests that Alexander intended to place Jalufka in reasonable apprehension of imminent bodily injury. When asked about the experience at trial, Jalufka said, "I thought he was going to cut me," and, "[F]or me to jump back, yeah, I was scared." The evidence is sufficient to establish not only that Alexander intentionally took action that constituted a threat, but that Jalufka perceived that threat and felt scared.

Viewing this evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Alexander intentionally or knowingly threatened Jalufka with imminent bodily injury. Alexander's second point of error is overruled.

**Jury Charge**

Alexander argues that it was reversible error for the court to omit the lesser-included offense of attempted aggravated assault from the jury charge. The State argues that even if the omission was error, Alexander did not properly preserve the error by objecting at trial, and thus must show that it was fundamental error.

An instruction regarding a lesser-included offense is needed when "(1) the requested charge is for a lesser-included offense of the charged offense and (2) there is some evidence that, if the defendant is guilty, he is guilty *only* of the lesser offense." *Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006). The State does not argue that attempted aggravated assault would fail to meet either of these requirements. The focus on appeal is whether error was properly preserved.

10

Alexander contends that by requesting the inclusion of the lesser-included offense of attempted aggravated assault in the informal charge conference, he properly preserved the error for appeal. Defendants must make any objections to the jury charge in writing or dictate them to the court reporter, in the presence of the court and opposing counsel, in order to preserve the error. Tex. Code Crim. Proc. Ann. art. 36.14 (West 2006).

At the close of the State's evidence, the trial court discussed the jury charge with counsel for both sides in an informal charge conference. Alexander requested that the jury charge include, as lesser-included offenses, attempted aggravated assault and terroristic threat. The State objected to the inclusion of terroristic threat, but made no objection to the inclusion of attempted aggravated assault. The court indicated that attempted aggravated assault would be included in the charge. The next morning, the court presented counsel with the proposed jury charge in written form. While discussing the charge with counsel, the court specifically pointed out that the charge gave "the jury the [choice of] aggravated assault or not guilty." When the court asked for requests or objections, Alexander renewed his request for the inclusion of terroristic threat and requested that disorderly conduct also be included as a lesser-included offense. Alexander did not object to the absence of attempted aggravated assault. Any error related to the omission of attempted aggravated assault from the jury charge was not preserved.

Because Alexander failed to preserve the error, we will only reverse on this issue if there is a showing that the jury charge error amounted to fundamental error. *See Almanza*, 686 S.W.2d at 171. Fundamental error requires a showing of egregious harm. *Id.* To qualify as egregious harm, the error must be so severe as to "deprive[] the accused of a fair and impartial trial."

11

*Id*. at 172 (internal quotation marks omitted). Because the failure to include a lesser-included offense in the jury charge does not amount to egregious harm per se, we must look at the actual harm caused. *See Williams v. State*, 851 S.W.2d 282, 287 (Tex. Crim. App. 1993) ("[W]e refuse to create a per se rule that a defendant suffers egregious harm when a trial judge fails to instruct the jury on a 'lesser included offense'. . . . We search for actual, not just theoretical harm.").

Alexander does not argue that the failure to include the lesser-included offense in the jury charge is fundamental error. Even if he had, he would not have been able to show that the error caused him to suffer egregious harm. In order to convict Alexander, the jury was still required to unanimously find that the evidence was sufficient to establish all of the elements of aggravated assault beyond a reasonable doubt. A review of the evidence, as discussed in the first and second points of error, shows that a rational jury could have found beyond a reasonable doubt that all of the elements were met. We cannot say that omission of the lesser-included offense of attempted aggravated assault deprived Alexander of a fair and impartial trial, given the facts of this case and the sufficiency of the evidence to support all of the elements of aggravated assault. Thus, any error in failing to include the lesser-included offense in the jury charge would not rise to the level of egregious harm.

The failure of the trial court to include the lesser-included offense of attempted aggravated assault in the jury charge was not properly preserved nor was it a fundamental error requiring reversal. Alexander's third point of error is overruled.

12

# CONCLUSION

Having overruled all of Alexander's points on appeal, we affirm the trial court's judgment of conviction.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed:   June 30, 2011

Do Not Publish