

# NUMBER 13-24-00090-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**SUMMER PERSKIN,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

---

## ON APPEAL FROM THE 483RD DISTRICT COURT
## OF HAYS COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Silva**
**Memorandum Opinion by Justice Longoria**

A jury convicted appellant Summer Perskin of two counts of aggravated assault with a deadly weapon, second-degree felonies. *See* TEX. PENAL CODE ANN. § 22.02(a)(2). Perskin elected to have the trial court sentence her, and she was sentenced to five years' incarceration on each charge, to run concurrently. In her sole issue on appeal, Perskin challenges the sufficiency of the evidence to support her conviction for aggravated assault

as to Count I of the indictment. We affirm.

## I. BACKGROUND[1]

The State's two count indictment alleged that Perskin intentionally and knowingly threatened her nephew James Clarke (Count I) and her sister Springette Clarke (Count II) with a knife. At trial, Springette testified that on June 11, 2022, she was at her parents' house when she and Perskin, "got into a little argument." The argument escalated when Perskin began getting louder and yelling. At the time, she and her sister were approximately five to six feet apart. At some point, Perskin "crossed over to where" Springette was standing. Springette explained that their father "was between" them when Springette's adult son, James, came out and said "something about leaving his mother alone." While Springette did not see it happen, she believed that at some point James threw water onto Perskin because she saw that Perskin's shirt was wet. Afterwards, Springette explained that she turned her attention back to what she was cooking when her son stated, "She has a knife." Springette stated that James was back in his room and she saw Perskin "had a knife up in the air in her hand and with her other hand she was banging on [James's] bedroom door and trying to open the door with the doorknob and going back and forth like that." Springette testified that she was concerned for her son's safety at that point, so she inserted herself between Perskin and James's door. Perskin put the knife up to Springette's face, "about an inch from [her] eye" and said "What? What are you gonna [sic] do about it?" Springette was scared that Perskin was going to hurt her. Springette asked Perskin if she was "gonna [sic] cut [her]" and Perskin reportedly

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

said, "Yeah, I'm gonna [sic] cut you."

James testified that the incident occurred at his grandparents' house, where James also lives. He explained that on June 11, 2022, he was in his bedroom "mixing music" with his headphones on. He usually keeps his headphones "to where [he] can't hear anything else in the room." However, he began to hear arguing coming from another room and, when the arguing continued, he decided to see what was happening in the other room. He saw Springette and Perskin arguing in the kitchen about a foot apart from each other. In an attempt to stop the argument, James filled a cup up "with a brief amount of water from the sink and [threw] it on [Perskin]." He did not throw the cup; he "just splashed the water." James testified that this occurred while Perskin was on the other side of the kitchen island from him. Perskin then turned toward him, "reached down and picked up" a knife, and began "walking toward[ him]." He wanted to get away from her, so he "turned around, went into [his] room, and shut the door and leaned against it." He stated that he believed Perskin wanted to "cut" him and that is why he retreated to his bedroom. He felt the handle move as he leaned against the door "like somebody was trying to open" it. He could hear his mother and aunt on the other side of the door. He explained that his aunt and mother were both emotional and upset at the time. As the voices moved further from his door, he felt it was safe to open the door and began to record the incident with his phone. He explained that everyone was still upset when he began to record. The video recorded by James was admitted into evidence and shows Perskin and Springette arguing with their father between them. At the beginning of the video, Perskin puts a knife down, which James testified was the knife she picked up when she went toward him.

3

On cross-examination, James stated that he did not know whether throwing water at Perskin escalated the situation. He admitted that he and Perskin had a physical altercation about ten years before the instant offense.

Detective Zachary Miller of the Hays County Sheriff's Office testified that when he was assigned to the case, he was instructed to retrieve the knife that was involved in the offense. Detective Miller explained that the officers who took the initial report on the night of the incident did not collect the knife at that time, which he believed was unintentional. Springette gave him the knife in question and stated it was the one used in the incident. Detective Miller stated that he did not corroborate this information beyond Springette's statement. Detective Miller confirmed that the knife was capable of causing death or serious bodily injury.

The defense presented testimony from Spencer Perskin, Perskin and Springette's father. Spencer testified that Springette came over from her mobile home located on the same property to use the kitchen in Spencer's home. At some point thereafter, there was an argument between Perskin and Springette. Spencer came from the living room to attempt to "break it up and calm the argument down." James threw water at Perskin and also got some on Spencer. Perskin then "lost her cool" and "picked up a knife that was laying with a bunch of other utensils" and "turned towards [James] and was very angry." Spencer explained that James retreated to his bedroom. Spencer stated that he did not see Perskin "chasing" James. Afterwards, Perskin turned towards Springette and "said something" at which point Spencer told Perskin to put the knife down and she did. He did not hear what Perskin said, but he testified that there was no "lunging," Perskin just turned

4

and pointed the knife toward Springette. He did not think anything would happen or that anyone "really felt threatened" but rather that it was taken as "a joke." Spencer testified that James was laughing during the incident.

The jury returned a guilty verdict on both counts and Perskin was sentenced as stated above. This appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE

By her sole issue on appeal, Perskin challenges the evidence supporting her conviction for aggravated assault with a deadly weapon against James. Perskin argues that the evidence supports the threat to Springette but does not support that Perskin threatened James with the knife.

### A. Standard of Review & Applicable Law

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence "in the light most favorable to the verdict" to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). "Each fact need not point directly and independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support

the conviction." *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.*

"A person commits [aggravated assault] if the person commits assault as defined in § 22.01 and the person uses or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE ANN. § 22.02(a)(2). As relevant here, a person commits assault if he intentionally or knowingly threatens another with imminent bodily injury. *Id.* § 22.01(a)(2). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B). Section 1.07(a)(17)(B) "does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury." *McCain v. State*, 22 S.W.3d

6

497, 503 (Tex. Crim. App. 2000). "'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46). Because criminal intent is intangible, it can be proved by circumstantial evidence. *Johnson v. State*, 919 S.W.2d 473, 477 (Tex. App.—Fort Worth 1996, pet. ref'd). An intent to inflict serious bodily injury or death may be shown by evidence of assertive conduct by an attacker. *Id.*

Evidence is sufficient if a knife is displayed in a manner conveying an express or implied threat that serious bodily injury or death will be inflicted if the desire of the person displaying the knife is not satisfied. *Billey v. State*, 895 S.W.2d 417, 422 (Tex. App.—Amarillo 1995, pet. ref'd); *see also Martinez v. State*, No. 01-07-01070-CR, 2008 WL 5263611, at *3 (Tex. App.—Houston [1st Dist.] Dec. 18, 2008, no pet.) (mem. op., not designated for publication). By producing the knife and exhibiting its blade, even partially, a defendant can achieve her desired effect of placing a person in fear of death or serious bodily injury. *See Billey*, 895 S.W.2d at 422–23.

## B.    Analysis

The jury heard testimony from James that Perskin picked up a knife as she advanced toward him angrily after he threw water on her. James retreated to his bedroom where he shut the door and leaned against it to keep it shut. He explained that the handle was moving, as though someone were trying to get in. Springette confirmed that she saw Perskin with a knife raised in one hand while Perskin pounded on James's door attempting to get in before Springette inserted herself between Perskin and the bedroom

7

door. Perskin did not deny the series of events including her picking up the knife and banging on James's door, but contends that she made no verbal threat to James and that the distance between herself and James negated any immediate threat to James. However, the jury heard testimony that Perskin advanced toward James with the knife in hand. James testified that he was afraid of being "cut" by Perskin, causing him to flee to his bedroom. Spencer testified that Perskin "lost her cool" and was "very angry" when she grabbed the knife as she went toward James. Furthermore, the jury heard evidence from Detective Miller that the knife was capable of causing death or serious injury.

Considering all of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have concluded that Perskin used a deadly weapon, namely a knife, while threatening James with imminent bodily injury. *See id.*; TEX. PENAL CODE ANN. § 22.02(a)(2). We overrule Perskin's sole issue.

### III.    CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
24th day of October, 2024.