**Jesse P. MAGANA, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 04–06–00180–CR.

Court of Appeals of Texas,
San Antonio.

June 6, 2007.

Discretionary Review Refused
Oct. 3, 2007.

Lori O. Rodriguez, Asst. Public Defender, San Antonio, for appellant.

Jessica A. Gonzalez, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

Jesse P. Magana was convicted by a jury of aggravated assault with a deadly weapon. He was sentenced to eight years imprisonment. On appeal, Magana claims the evidence is legally and factually insufficient to support the jury's verdict because the pocket knife he used was not a deadly weapon as defined by the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(A), (B) (Vernon 2003).

### FACTUAL AND PROCEDURAL BACKGROUND

Jesse and Veronica Magana, although married for about eight years, had an "off and on" relationship. According to Veronica, on the evening of September 28, 2003, during a period of separation, the couple met to get something to eat. Veronica picked Jesse up from his sister's house, and they went to Jack–in–the–Box. The two began arguing because Jesse wanted to get a room so he and Veronica could sleep together. Veronica parked and tried to get out of the car, but Jesse prevented her from doing so and ordered her to drive the car. As she drove, they continued to argue. When Jesse was preoccupied by a call on his cell phone, Veronica parked the car and went to use a pay phone. She was upset because Jesse was keeping her in the car and she wanted to go home.

As Veronica was trying to use the pay phone, Jesse came toward her. They began fighting, and he stabbed her with a small, black pocket knife. As he stabbed her, he told her "[t]hat he wished that [she] would die." He stabbed her four times: two times on her shoulder, once on her chest and once on her hand. He then forced her into the back seat of the car. Jesse proceeded to pick up his sister and

brother-in-law and they drove around for a while trying to decide what to do. Eventually, they took Veronica to the hospital where she was treated for her stab wounds. She was released from the hospital after an hour or two.

According to Jesse, Veronica was very angry when she came to pick him up that evening. He got into the car and they began arguing about getting a room to spend some time together. Veronica stopped the car, they both got out, and she became violent. Then, according to Jesse, Veronica got a knife from her purse and sliced him on the finger. He took the knife away, but later returned it to her. Veronica tried to swing at him again with the knife, so Jesse grabbed the knife, which he described as a little, black pocket knife, and stabbed Veronica in self-defense. Jesse testified he then put Veronica in the back seat of the car, drove to his sister's house, and took Veronica to the hospital.

While Veronica was at the hospital emergency room, she was treated by Dr. Larry Sands. Dr. Sands testified Veronica had four knife wounds—two on her shoulder, one over her left breast, and one on her hand. Dr. Sands stated he considered a knife, specifically, a small pocket knife, to be a deadly weapon. He also stated a small pocket knife is capable of causing serious bodily injury or death. Dr. Sands testified that, although Veronica's wounds were superficial, he ordered a chest x-ray because he was concerned about the location and multiplicity of the wounds. In particular, Dr. Sands was concerned about the proximity of the wounds to Veronica's lungs, heart and major vessels. Dr. Sands further stated he believed the wound to Veronica's hand was a defensive wound.

After hearing the evidence, the jury convicted Magana of aggravated assault with a deadly weapon. Magana was sentenced to eight years imprisonment.

## DISCUSSION

In two issues, Magana argues the evidence is legally and factually insufficient to sustain the conviction because the pocket knife he used was not a deadly weapon as defined by the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B).

In a legal sufficiency review, we view all the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729–30 (Tex. Crim.App.), *cert. denied*, 546 U.S. 962, 126 S.Ct. 481, 163 L.Ed.2d 367 (2005). In a factual sufficiency review, we view all of the evidence in a neutral light and will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Id.* at 730–31.

The Texas Penal Code provides that a person commits an assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1)(Vernon Supp.2006). The assault becomes aggravated when the person causes serious bodily injury to another or uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. § 22.02(a)(1), (2)(Vernon Supp. 2006). The Penal Code includes in its definition of "deadly weapon" "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury". TEX. PENAL CODE ANN. § 1.07(a)(17)(B). Further, "serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that

causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (Vernon 2003).

■ And while it is well settled that a knife is not a deadly weapon per se, it can be a deadly weapon if the person using it intends to use it in a way in which it would be capable of causing death or serious bodily injury. *Williams v. State,* 575 S.W.2d 30, 32 (Tex.Crim.App.1979). When no actual injury is sustained by the victim, the prosecution must introduce evidence of other factors to establish that the knife is a deadly weapon. *Victor v. State,* 874 S.W.2d 748, 751–752 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). The factors to consider include the size, shape, and sharpness of the knife; the manner of its use or intended use; the nature or existence of inflicted wounds; evidence of the knife's life-threatening capabilities; the physical proximity between the victim and the knife; and any words spoken by the one using the knife. *See e.g., Thomas v. State,* 821 S.W.2d 616, 619–620 (Tex.Crim. App.1991); *Fortenberry v. State,* 889 S.W.2d 634, 636–37 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd); *Revell v. State,* 885 S.W.2d 206, 209 (Tex.App.-Dallas 1994, pet. ref'd). The State does not have to introduce the knife into evidence to prove the knife was a deadly weapon. *See Morales v. State,* 633 S.W.2d 866, 868 (Tex. Crim.App.1982).

■ In this case, the knife was not introduced into evidence. Further, Veronica's injuries from the knife were superficial and therefore do not rise to the level of "serious bodily injury." Thus, we look at the evidence to determine whether the knife was, in the manner of its use or intended use, capable of causing death or serious injury.

Although the two versions of the events vary in some details, there is evidence in the record that Jesse came toward Veronica while she was using a pay phone and stabbed her with a pocketknife four times. As he stabbed her, he told her "[t]hat he wished that [she] would die." Although the evidence shows it was a small knife, it was sharp enough to cause the superficial wounds Veronica suffered. Further, the location and number of wounds were of such concern to the emergency room doctor that he ordered an x-ray to check Veronica's lungs, heart and major vessels. The doctor testified that, although he did not see the knife, he considered a small pocket knife to be a deadly weapon and that it is capable of causing serious bodily injury or death.

We hold that the evidence, when viewed in the light most favorable to the prosecution, supports a determination that the knife was a deadly weapon. Thus, we overrule Magana's legal insufficiency issue. *Prible,* 175 S.W.3d at 729–30.

We further hold that the evidence, when viewed in a neutral light likewise supports a deadly weapon finding. *Id.* at 730–31. We cannot say that the great weight and preponderance of the evidence contradicts the jury verdict. *Id.* Therefore, we overrule Magana's factual sufficiency issue.

## CONCLUSION

Accordingly, we overrule appellant's issues and affirm the trial court's judgment.

Dissenting opinion by STEVEN C. HILBIG, Justice.

Dissenting opinion by STEVEN C. HILBIG, Justice.

There is an oft-quoted truism in law that bad facts make bad law. Such is the situation in this case. Given that the Texas Legislature has not classified knives as

deadly weapons per se, Texas courts are forced to engage in metaphysical discussions similar to the medieval quest to determine how many angels can dance on the head of a pin by attempting to determine whether a knife, by its "use or intended use is capable of causing death or serious bodily injury,"[2] is a deadly weapon. Unless and until the Texas Legislature acts on this issue, the burden remains on the State of Texas to prove the "deadliness" of a knife before the State can impose harsher punishment for a criminal act. I agree with the majority's conclusion that the evidence is legally sufficient to support Magana's aggravated assault conviction but I disagree with its analysis because the opinion essentially holds that all pocket knives are deadly weapons per se. Unlike the majority, I would hold the evidence is factually insufficient to demonstrate the knife used in this assault is capable of causing serious bodily injury or death.

### THE RELEVANT EVIDENCE

The evidence regarding the "deadliness" the knife used in this assault is meager at best. The complainant testified appellant was angry and "came at" her with his hand raised. She thought he was going to punch her, but instead he "stabbed" her several times with a "small black pocket knife." At some point during the attack or while appellant was trying to get the complainant in the car, appellant said "he wished that [she] would die." The knife was not produced at trial nor was any facsimile of the knife used for demonstrative purposes. The only verbal descriptions of the knife are the complainant's testimony that it was a "small black pocket knife" that appellant "habitually carried" and appellant's testimony that it was "a little pocket knife ... about this big (indicating)"[3] that he had purchased for the complainant at a flea market for two or three dollars and which she carried with her makeup supplies. There was no evidence of the length or width of the blade or its sharpness, and no testimony the pocket knife was open during the attack.

The complainant suffered four wounds: on the top of her left shoulder; on the front of her left shoulder; above the breast on the left side of the chest; and between her knuckles on her right hand. At the hospital she indicated to Dr. Sands, the emergency room doctor, that her pain was "mild" as opposed to "moderate" or "severe." Dr. Sands testified that because of the location of a wound on her chest, he ordered a chest x-ray to determine whether there was damage to complainant's lung or a major blood vessel. When the x-ray revealed no damage, Dr. Sands concluded all the complainant's wounds were superficial and required no sutures. The complainant suffered no puncture wounds.[4] Dr. Sands testified he did not see the knife and could not tell anything about the type of knife or its length based on the wounds. Nevertheless, he stated his opinion that "a small knife, like a pocket knife" is a deadly weapon.

---

**2.** The Penal Code in relevant part defines a deadly weapon as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PEN.CODE ANN. § 1.07(17)(B) (Vernon Supp. 2006).

**3.** Neither party stated for the record the approximate length of the knife as indicated by appellant.

**4.** In several places on the pre-printed medical record form used by the emergency room physician, Dr. Sands crossed out the word "puncture" where it was used to describe the wounds and replaced it with the word "knife."

## APPLICABLE LAW

Appellant challenges the sufficiency of the evidence to prove that he used or exhibited a deadly weapon during the assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon Supp.2006). A pocket knife "is not manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury," and therefore is not a deadly weapon per se under Texas law. *Limuel v. State,* 568 S.W.2d 309, 311 (Tex.Crim.App. [Panel Op.] 1978); *see* TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (Vernon Supp.2006). In a particular case a knife may be a deadly weapon if " 'in the manner of its use or intended use [it] is *capable* of causing death or serious bodily injury.' " *McCain v. State,* 22 S.W.3d 497, 503 (Tex.Crim.App.2000) (quoting TEX. PENAL CODE ANN. § 1.07(a)(17)(B) and adding emphasis). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PEN.CODE ANN. § 1.07(a)(46) (Vernon Supp.2006). A knife need not actually cause serious bodily injury or death to be a deadly weapon within the meaning of the Penal Code; however, the evidence must establish "the actor intend[ed] a use of the [knife] in which it would be capable of causing death or serious bodily injury." *McCain,* 22 S.W.3d at 503. When wounds caused by a knife do not result in serious bodily injury or death, as in this case, the knife is a deadly weapon only if the State proves "the knife: (1) was capable of causing serious bodily injury; and (2) was displayed or used in a manner that establishes the intent to use the knife to cause death or serious bodily injury." *Lockett v. State,* 874 S.W.2d 810, 814 (Tex.App.-Dallas 1994, pet. ref'd); *see Johnson v. State,* 919 S.W.2d 473, 477 (Tex.App.-Fort Worth 1996, pet. ref'd) (holding that State must prove "the thing used as a weapon was capable of causing death or serious bodily injury"). The State may establish that the knife was in fact "deadly" through evidence of the nature and use of the knife, including the knife itself or a facsimile of knife, witnesses' descriptions of the knife's size, shape, and sharpness, appellant's verbal threats, the manner in which the knife was used, and the nature of any wounds caused. *See Lockett,* 874 S.W.2d at 814; *Victor v. State,* 874 S.W.2d 748, 751–52 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). And, although expert testimony is not required to establish that a specific knife is a deadly weapon, "it may still be particularly useful in supplementing meager evidence on the issue in order to meet the sufficiency requirement." *Davidson v. State,* 602 S.W.2d 272, 273 (Tex.Crim.App. [Panel Op.] 1980).

## DISCUSSION

Most cases discussing the "deadliness" of a knife usually focus on how a knife, obviously capable of causing serious bodily injury of death, was "used or intended to be used" by the assailant. *See, e.g., McCain,* 22 S.W.3d at 503 (eight-inch butcher knife used in commission of crime); *Davidson,* 602 S.W.2d at 274 (six-inch long knife with a pointed blade two-and-a-half to three inches long and one-half inch wide used in a robbery); *Billey v. State,* 895 S.W.2d 417, 422–23 (Tex.App.-Amarillo 1995, pet. ref'd) (eight-to-ten-inch hunting knife used in commission of crime). The complainant's testimony about appellant's demeanor, how he used the knife, and what he said to her is clearly sufficient to support an inference that appellant intended to use the knife in a manner that was likely to cause death or serious bodily injury in the instant case. My disagreement with the majority regards the failure of proof on the issue of whether

the pocket knife was objectively or intrinsically capable of causing serious bodily injury or death.

The majority holds the State met its burden on this issue, pointing to: (1) evidence that the knife "was sharp enough to cause the superficial wounds;" (2) "the location and number of wounds were of such concern to the emergency room doctor that he ordered an x-ray to check her lungs, heart and major vessels;" and (3) the doctor's testimony that "although he did not see the knife, he considered a small pocket knife to be a deadly weapon and that it is capable of causing serious bodily injury or death." I do not believe this evidence, taken singly or cumulatively, supports a finding that the knife was **capable** of causing serious bodily injury.

The majority infers from the fact that the knife caused superficial wounds that it was capable of causing serious bodily injury. This inference is not reasonable in light of the complainant's testimony. The complainant testified appellant was angry when he attacked her, came at her with his hand raised, "stabbed" her four times, and told her "I wish you would die." As noted above, a rational juror could infer from this evidence that appellant intended to use the knife in a manner likely to cause serious bodily injury or death. The complainant's testimony that she was "stabbed" rationally implies the knife was thrust or plunged at her body, and the knife contacted her body in this manner four times. Yet, when appellant used the knife in this manner, *only* small, superficial wounds resulted-wounds that *required* no medical intervention other than prophylactic antibiotics and a tetanus shot. No evidence was presented that appellant's thrusts were blocked by heavy clothing, a

purse, or anything else that prevented the full application of the knife to complainant's body. In my view, the only reasonable inference from the evidence that the knife caused only superficial wounds and no puncture wounds is that it was not capable of causing serious bodily injury or death. Even though there is ample evidence demonstrating that appellant may have **wanted** to inflict serious bodily injury or death, such evidence cannot be used to bolster the lack of evidence regarding the knife's **capacity** to cause such injury.

The majority next points to the concerns expressed by Dr. Sands as to the location of the wounds near or on the complainant's chest as potentially life-threatening. Dr. Sands testified that when he observes a wound to the chest he is concerned about possible injury to a lung or major blood vessel. He testified that small wounds [5] are particularly difficult to assess without lab work or chest films. Because the complainant exhibited a small chest wound, he ordered a chest x-ray, which revealed no injury. Unquestionably, a knife wound to the chest *may* cause serious bodily injury. However, this one caused only superficial wounds. The mere fact the doctor took measures to determine whether any serious bodily injury had been caused is no evidence that the knife was capable of causing such injury. To hold that a knife is a deadly weapon simply because a doctor had concern for potential injuries eviscerates the requirement that the State prove the knife have the capacity to cause serious bodily injury or death.

Finally, the majority relies on the doctor's testimony that he considers "a small knife like a pocket knife" to be a deadly weapon and that he has seen a pocket

---

5. A fair reading of the doctor's testimony indicates he was referencing wounds caused by narrow as opposed to wide-bladed objects. Wounds could be narrow but deep and thus cause more damage.

knife cause serious bodily injury or death. Obviously, we are all aware in our modern world that short-bladed knives can be used with deadly effect. However, the doctor testified he did not see the knife used in this case; he testified he knew nothing about its length, width, or sharpness, and could not ascertain anything about the knife from the complainant's wounds; and he was not asked to offer his expert opinion through a hypothetical question based on the knife as described by the complainant and the wounds she suffered. His testimony thus states nothing more than his opinion that all pocket knives are deadly weapons, a position contrary to Texas law and which provides no evidence about the deadly capacity of the pocket knife used in this case. *See Victor*, 874 S.W.2d at 751–52 (where defendant displayed pocket knife during robbery, but no evidence was presented about size of pocket knife or how defendant used it, police officer's expert opinion that a pocket knife is a deadly weapon did not support finding that defendant used a deadly weapon).

If the evidence as discussed above were the only evidence supporting the verdict, I would conclude the evidence is legally insufficient to establish appellant used a deadly weapon. However, there is additional evidence not relied upon by the majority, which, when viewed in the proper light, renders the evidence legally sufficient. In reviewing claims of legal insufficiency, we must view all the evidence "in the light most favorable to the prosecution" and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

While testifying, appellant was asked to describe the knife for the jury. He responded that it was "a little pocket knife, which [he] bought for [complainant] at the flea market, and it was about this big[6] (indicating)." Considering this evidence in the light most favorable to the verdict, we must assume the jury saw the gesture indicating the knife's length, considered such length in assessing the capability of the pocket knife to cause serious bodily injury or death, and that what they saw supports the verdict. *See Rogers v. State*, 756 S.W.2d 332, 336–37 (Tex.App.-Houston [14th Dist.] 1988, pet. ref'd); *see also Berecz v. State*, No. 01–95–01110–CR, 1996 WL 325665, at *3 (Tex.App.-Houston [1st Dist.] Jun. 13, 1996, pet. ref'd) (not designated for publication) (holding that in legal sufficiency review of evidence that knife used in robbery was deadly weapon, appellate court presumes testimony describing knife's blade as "this long" supports the verdict); *Johnson v. State*, No. 14–99–00968–CR, 2001 WL 838079, at *5 (Tex.App.-Houston [14th Dist.] Jul. 26, 2001, no pet.) (not designated for publication) (same).

However, when considering the factual sufficiency of the evidence, we cannot engage in such presumptions and must view all the evidence in a neutral light. *Garza v. State*, 213 S.W.3d 338, 344 (Tex.Crim. App.2007); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). "We will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. A clearly wrong and unjust

---

**6.** I would note that the description did not differentiate between the length of the knife versus the length of the blade and whether the description was with the blade opened or closed. The record also fails to indicate if the knife contained more than one blade. Obviously, one can infer something about the length of a blade based on the total length of the pocket knife.

verdict occurs where the jury's finding is 'manifestly unjust,' 'shocks the conscience,' or 'clearly demonstrates bias.'" *Garza,* 213 S.W.3d at 344. Because the factual sufficiency review is conducted viewing the evidence in a neutral light, we make no presumption about appellant's nonverbal description of the knife. Leaving aside appellant's nonverbal demonstration as to the length of the knife, there is simply no evidence to support the jury's finding that the weapon in this case was capable of causing serious bodily injury or death. *See Lockett,* 874 S.W.2d at 814. Accordingly, I would hold the evidence factually insufficient to support the verdict and would reverse the judgment and remand the cause to the trial court for a new trial.