*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# DISSENTING OPINION

No. 04-07-00247-CR

Juan **RIVERA**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 06-08-11940
Honorable Richard C. Terrell, Judge Presiding

Opinion by: Steven C. Hilbig, Justice
Dissenting opinion by: Phylis J. Speedlin, Justice

Sitting:        Alma L. López, Chief Justice
                 Phylis J. Speedlin, Justice
                 Steven C. Hilbig, Justice

Delivered and Filed:   August 13, 2008

I disagree with the majority's conclusion that the evidence is factually insufficient to support the jury's finding that Rivera used a deadly weapon – specifically, that in the manner of its use or intended use the pocket knife was not "capable" of causing serious bodily injury. As noted by the majority, a knife is not a deadly weapon *per se*, but becomes a deadly weapon if, in the manner of its use or intended use, it is *capable* of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp. 2007) (emphasis added); *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). We must evaluate the capability of a weapon, in this case a pocket knife,

to cause serious bodily injury or death in light of the facts surrounding the particular offense. *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991); *Brown v. State*, 716 S.W.2d 939, 946-47 (Tex. Crim. App. 1986). Factors to consider include the size, shape and sharpness of the knife; the manner of its use or intended use; the nature or existence of inflicted wounds; evidence of the knife's life-threatening capabilities; the physical proximity between the victim and the knife; and any words spoken by the person using the knife. *Magana v. State*, 230 S.W.3d 411, 414 (Tex. App.—San Antonio 2007, pet. ref'd). In order to establish the knife was a deadly weapon, the State need not introduce the knife itself or a facsimile into evidence, and need not prove any wounds were actually inflicted or that "serious bodily injury" actually occurred. *Id.*; *Victor v. State*, 874 S.W.2d 748, 751-52 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Moreover, expert testimony that in the manner of its use the knife was capable of causing death or serious bodily injury is not required in order for the jury to find a deadly weapon was used. *Denham v. State*, 574 S.W.2d 129, 131 (Tex. Crim. App. 1978).

Here, the evidence consisted of four photographs of wounds suffered by Justin Lerma, and the testimony of three witnesses: an eyewitness, Teresa Uribe; the victim, Lerma; and the responding officer, Odel Mendoza. Teresa Uribe testified that she saw the appellant Rivera holding a pocket knife immediately before he attacked her son-in-law, Lerma; she could not see the handle, but saw the reflection off of the knife blade. She then saw Rivera make the initial stab into Lerma with the pocket knife before Lerma got away and fled next door where he was pursued. Impeachment evidence was introduced consisting of a subsequent letter written by Uribe in which she states that she falsely accused Rivera; at trial, Uribe explained she did not want Rivera to take the blame for the fight, but that her trial testimony that Rivera stabbed Lerma with a pocket knife was

true. This evidence went to Uribe's credibility with respect to the identity of the perpetrator, not the presence of a pocket knife and the manner of its use or intended use against Lerma.

The victim, Justin Lerma, testified that Rivera "stabbed me from the back and around my stomach," resulting in seven to eight wounds "around my back, around my stomach and on my arm." Lerma stated he did not see the weapon used, but that "it felt like a knife . . . because it was going in like nothing." Lerma stated he was "trying to get away" and ran to another yard next door where Rivera chased him. After the attack, Lerma went to the hospital, where the wounds were cleaned and closed with "stickers that are like stitches;" he was released that same night. He also received medication for pain. Lerma testified that he could not return to work for approximately one month because he was "in a lot of pain" and needed a doctor's release. Finally, he testified that his back still hurts when it gets cold. On cross-examination, Lerma testified that he thought another guy, Oscar, also stabbed him once on his arm with a beer bottle during the fight.

Finally, Officer Mendoza testified that Lerma had "blatant injuries to his stomach," and Lerma told him he had been stabbed with "what appeared to be a knife." The officer testified he saw "several injuries," "some wounds to his stomach, to his back area, and to his rib area, all over . . . on his abdomen and his back area." The officer described the wounds as "gaping." Specifically, Officer Mendoza identified State's Exhibit 2 as a photograph showing "a gaping hole," explaining, "so I knew it was some sort of aggravated assault with some sort of weapon, because he had a gaping wound on . . . his stomach area . . . ." Mendoza also described State's Exhibit 4 as showing a "gaping hole on the left side of the arm towards the back . . . indicat[ing] to us, whoever attacked him, either attacked him from the back or while he was running away." The officer stated Lerma was treated at the scene, and subsequently went to the hospital for additional treatment. Mendoza

testified that the officers found a "blood trail," but did not recover the knife. Officer Mendoza testified that he had investigated a few scenes where a knife was used to kill somebody, and stated that a knife "can be employed as a deadly weapon" depending on the manner of its use.

Considering Officer Mendoza's testimony that a knife is capable of causing serious bodily injury, *i.e.*, being used as a deadly weapon, his observation of a blood trail and several "gaping" wounds that required medical attention both at the scene and the hospital, and his characterization of the wounds as "indicative of an aggravated assault" involving a deadly weapon, as well as the other testimony that the pocket knife was used to stab Lerma multiple times, I cannot agree that the evidence is "so weak" as to render the jury's finding that Rivera used a deadly weapon "clearly wrong and manifestly unjust." *See Lancon v. State*, 253 S.W.3d 699, 704-05 (Tex. Crim. App. 2008) (stating standard for factual sufficiency review). Even though the knife was not recovered, there was evidence about the type of knife, its sharpness, and the manner of its use, as well as the infliction of a number of "gaping" wounds, some of which were in the stomach area, that required medical attention; in addition, the officer stated that a knife can be a deadly weapon depending on the manner of use. *See Magana*, 230 S.W.3d at 414. I believe the evidence in this case supports a reasonable jury finding that the pocket knife was capable of inflicting serious bodily injury based on the manner of its use or intended use, and was therefore a deadly weapon. *See McCain*, 22 S.W.3d at 503 (object is "deadly weapon" if actor intends a use of the object in which it would be capable of causing death or serious bodily injury). Consequently, I would affirm the trial court's judgment.

Phylis J. Speedlin, Justice

PUBLISH