COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| BILLY JOE STOFAN, | § | No. 08-14-00166-CR |
| Appellant, | § | Appeal from the |
| v. | § | 109th Judicial District Court |
| THE STATE OF TEXAS, | § | of Crane County, Texas |
| Appellee. | § | (TC# 1655) |
| | § | |

## **O P I N I O N**

Billy Joe Stofan was convicted of two counts of aggravated assault with a deadly weapon and sentenced to six years' imprisonment on each count. In one issue, he challenges the sufficiency of the evidence supporting his convictions. We affirm.

### **FACTUAL AND PROCEDURAL BACKGROUND**

Stofan was charged with two counts of aggravated assault with a deadly weapon and two counts of unlawful restraint.[1] These charges arose from a series of events transpiring in the early morning hours of October 28, 2012. At approximately 1:15 a.m. that morning, Dawn Barrow returned home from a costume party. When Barrow entered the mobile home she shared with Stofan, her boyfriend, and B.S., her then-twelve-year-old son, Stofan attacked her. Angry with

---

[1] The trial court rendered judgments of acquittal on the unlawful restraint counts.

Barrow for not having come home earlier, Stofan grabbed her, threw her onto the bed in their room, and pinned her down. While on top of Barrow, Stofan put a knife to Barrow's face and threatened "to cut [her] from ear to ear."

Barrow's hysterical crying woke B.S., who, upon discovering the reason for his mother's cries, suffered an asthma attack. After B.S. received treatment, Stofan dragged him and his mother back to the room, where he taped them to a chair. While B.S. was bound, Stofan grabbed his hand and asked him which one he wanted. When Barrow asked Stofan what he "mean[t] by that[,]" Stofan responded, "I'm going to get – I'm going to cut one of his fingers off." Barrow broke free and clutched B.S.'s hands. Incensed, Stofan seized Barrow by the throat and shoved her to the back of the closet. Barrow passed out, but when she regained consciousness, Stofan hauled her into the bathroom. While choking Barrow, Stofan "raised the knife above [her] like he was going to stab [her] in [her] heart, but he changed his mind at the last minute and stabbed [her] bathroom wall." The ordeal ended a few minutes later, however, when Stofan gave the knife—and four others—to B.S. Barrow and B.S. eventually escaped to a neighbor's house, and the police were summoned. The responding officer, Luis Navarette, discovered several knives in B.S.'s room. After B.S. pointed out the knife Stofan used, Officer Navaratte photographed it and collected it as evidence. The photograph shows three kitchen steak knives lying next to a pair of men's work boots (SX-2).

At trial, Barrow could not identify the specific steak knife brandished by Stofan, but she was certain it was one of those depicted in State's Exhibit No. 2. B.S., on the other hand, was more certain than his mother in identifying the knife wielded by Stofan:

> [PROSECUTOR]: Okay. And can you identify the knife that Mr. Stofan had in the bedroom when he had you tied –

2

[B.S.]:   This one.

[PROSECUTOR]:   Okay.   Does it kind of look like the other knife?

[B.S.]:   Yes, ma'am.   But it is a little bit longer.

On cross-examination, B.S. confirmed that the particular knife brandished by Stofan was depicted in State's Exhibit No. 2[2]:

> [DEFENSE COUNSEL]:   And Ms. Holguin was showing you a photo there.   The knives that you were talking about in that photo -- Was the knife that you think that you saw Billy have in that picture; or was it -- was it one of the longer ones that's not in that picture?
>
> [B.S.]:   It was in the picture, the long one on the picture.

This steak knife was admitted into evidence as State's Exhibit No. 19 and shown to the jury.[3]

## DEADLY WEAPON

Stofan contends that the State failed to prove the knife he wielded was a deadly weapon. We disagree.

### *Standard of Review*

The legal sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), is the only standard a reviewing court applies in determining whether the evidence is sufficient to support a conviction.   *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010).   When reviewing the sufficiency of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the offense beyond a reasonable doubt.   *Hooper v.*

---

[2] B.S.'s testimony refutes the claim made by Stofan that "no witness ever specifically identified the knife used."

[3] Stofan incorrectly claims that "[o]nly exemplars were shown to the jury."

*State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2788-89.

Under a legal sufficiency review, we may not substitute our judgment for that of the jurors, who are the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App. 2007). We therefore defer to the jurors' resolution of these issues and to their responsibility to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13, *citing Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2788-89. In resolving what the facts are and what reasonable inferences may be drawn from them, the jurors may accept one version of the facts and reject another, and they may reject any part of a witness's testimony, even if uncontradicted. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000), *overruled on other grounds*, *Laster v. State*, 275 S.W.3d 512 (Tex.Crim.App. 2009); *Henderson v. State*, 29 S.W.3d 616, 623 (Tex.App.--Houston [1st Dist.] 2000, pet. ref'd).

### *Applicable Law*

A person commits an assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX.PENAL CODE ANN. § 22.01(a)(1)(West Supp. 2014). The assault becomes aggravated when the person: (1) causes serious bodily injury to another; or (2) uses or exhibits a deadly weapon during the commission of the assault. TEX.PENAL CODE ANN. § 22.02(a)(1), (2)(West 2011). A deadly weapon is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."[4] TEX.PENAL CODE ANN. § 1.07(a)(17)(B)(West Supp. 2014). Although a knife is not a deadly weapon *per se*, it becomes

---

[4] "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX.PENAL CODE ANN. § 1.07(a)(46)(West Supp. 2014).

one if the person brandishing it, uses it, or intends to use it in a manner capable of causing death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex.Crim.App. 2000).

The capacity of a knife to cause death or serious bodily injury is evaluated in light of the facts surrounding the particular offense. *Thomas v. State*, 821 S.W.2d 616, 620 (Tex.Crim.App. 1991). When, as here, the knife does not cause death or serious bodily injury, to support the finding that the offense was aggravated by the display of the knife, the State must adduce evidence establishing that the knife was capable of producing these results. *Id*. Pertinent evidence includes: (1) the knife's size, shape, and sharpness; (2) the manner of its use or intended use; (3) its life-threatening capabilities; (4) the physical proximity between the victim and the knife; (5) the words, if any, spoken by the person brandishing the knife; and (6) the nature or existence of inflicted wounds. *Magana v. State*, 230 S.W.3d 411, 414 (Tex.App.--San Antonio 2007, pet. ref'd). No single factor is determinative. *Bailey v. State*, 46 S.W.3d 487, 491 (Tex.App.--Corpus Christi 2001, pet. ref'd).

### *Discussion*

When viewed in the light most favorable to the verdict, the evidence is sufficient to support the jury's finding that the steak knife displayed by Stofan was capable of inflicting death or serious bodily injury based on the manner of its use or intended use, and was therefore a deadly weapon.

Relying primarily on evidence concerning the manner of the knife's use or intended use, the physical proximity between the victims and the knife, the words spoken by Stofan, and the existence of inflicted wounds, the State established that—by deed and word—Stofan threatened to seriously injure Barrow and B.S. with the knife and—by deed—injured Barrow with the knife. Barrow testified that Stofan put the steak knife to her face and threatened to cut it. According to

5

Barrow, the abrasions to her cheeks depicted in State's Exhibits Nos. 3 and 4 were caused by the knife. Barrow also testified that Stofan acted as if he was going to stab her heart with the knife. Both Barrow and B.S. related that Stofan put the steak knife to B.S.'s hand and threatened to cut off one of his fingers. As the exclusive judge of the credibility of witnesses, the jury was free to believe Barrow's and B.S.'s version of the facts. By finding Stofan guilty, the jury apparently chose to believe them, and their testimony supports the jury's finding that Stofan assaulted them and used or exhibited a deadly weapon, *i.e.*, the steak knife, while doing so.

In challenging the sufficiency of the evidence supporting his conviction, Stofan raises three arguments. None are persuasive.

First, he contends that the absence of testimony regarding the knife's size, shape, and sharpness or its capacity to cause serious bodily injury means that "the State wholly failed . . . to present . . . evidence of the dangerousness of the knife." But Stofan's contention is without merit because it is belied by the record and case law.

The record refutes Stofan's contention. The knife and photographs of it were introduced into evidence. These photographs depict the knife's size, shape, and sharpness. The knife has an approximate overall length of six inches, and its blade is longer than its handle, is serrated, and ends in a sharp point. Plainly, the knife is capable of causing death or serious bodily injury.

The soundness of Stofan's contention is likewise negated by existing authority. It is well-settled that expert testimony is not required to establish that a specific knife is a deadly weapon. *Davidson v. State*, 602 S.W.2d 272, 273 (Tex.Crim.App. [Panel Op.] 1980). Nor is the State required to elicit testimony concluding that the weapon was capable of producing serious bodily injury. *Williams v. State*, 575 S.W.2d 30, 32 (Tex.Crim.App. 1979). Thus, to support the

6

finding that the offense was aggravated by the display of the steak knife, the State was not required to adduce testimony, lay or otherwise, establishing that the steak knife was a deadly weapon. And, as noted earlier, no single factor is determinative. *See Bailey*, 46 S.W.3d at 491. Accordingly, even if the record contained no evidence of the knife's size, shape, and sharpness, the jury could have relied on the other evidence adduced by the State to conclude that the knife was capable of inflicting death or serious bodily injury based on the manner of its use or intended use.

Second, Stofan argues that the State failed to prove "that the knife was used as a deadly weapon" because the evidence does not demonstrate that he displayed the knife "in a manner conveying an express or implied threat of serious bodily injury or death." [Emphasis omitted]. In support of his argument, Stofan cites the aforementioned *Davidson* and *Tisdale v. State*, 686 S.W.2d 110 (Tex.Crim.App. 1984). But Stofan's reliance on these cases is misplaced. In *Davidson*, the knife in question was not introduced in evidence and the testimony established that it was held no closer than five feet from the complaining witness. *See Davidson*, 602 S.W.2d at 274. Here, by contrast, the knife was introduced into evidence and the testimony established that it was held to Barrow's face and to B.S.'s hand. In *Tisdale*, there was no evidence of any threatening words or gestures by the appellant. *See Tisdale*, 686 S.W.2d at 111-12. The converse is true here. Stofan threatened to cut Barrow's face and B.S.'s finger and acted as if he was going to stab Barrow in the heart.

Third, Stofan asserts that "[t]he State failed to provide the jury evidence that either Barrow or [B.S.] suffered serious bodily injury." But the State was not prosecuting Stofan for aggravated assault under that theory. Rather, as the indictments make clear, the State was proceeding under the theory that Stofan was guilty of aggravated assault because he used or exhibited a deadly

weapon while assaulting Barrow and B.S.:

> [C]ause [sic] bodily injury to Dawn Barrow, by grabbing her face and choking her and placed a knife to her face threatening to cut her face, and the defendant did then and there use and exhibit a deadly weapon, to wit, a knife, during the commission of said assault, which in the manner of its use and intended use was capable of causing death or serious bodily injury . . . .

.        .        .

> [C]ause [sic] bodily injury to [B.S.] by grabbing him and throwing him, and threatening to cut his finger off, and the defendant did then and there use and exhibit a deadly weapon, to wit, a knife, during the commission of said assault, which in the manner of its use and intended use was capable of causing death or serious bodily injury . . . .

This was the theory of responsibility submitted to the jury in the trial court's charge. And this was theory of responsibility supported by the evidence.

Stofan's issue is overruled.

### CONCLUSION

The trial court's judgment is affirmed.

July 10, 2015

                                        YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

8