

# NUMBER 13-14-00619-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

COURTNEY HENDERSON,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

## On appeal from the 105th District Court
## of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Courtney Henderson appeals his conviction for aggravated robbery, a first-degree felony, enhanced by appellant's prior felony conviction.  *See* TEX. PENAL CODE ANN. §§ 12.42(c)(1), 29.02, 29.03(a)(2) (West, Westlaw through 2015 R.S).  The jury found appellant guilty, and the trial court assessed punishment at fifteen years'

confinement in the Institutional Division of the Texas Department of Criminal Justice. By one issue, appellant argues the evidence is insufficient to support his conviction for aggravated robbery, particularly the aggravated element of using a deadly weapon during the commission of the crime. *See id.* § 29.03(a)(2). We affirm.

## I. BACKGROUND

Yvonne Martinez testified that her vehicle was stopped near the hospital at the intersection of Morgan Avenue and Nineteenth Street when appellant entered her vehicle from the front passenger side.[1] Appellant pressed his foot on the accelerator while Martinez pressed on the brake. Martinez stated that appellant began hitting her head with his fists. Martinez explained that as she struggled with appellant, he bit her and "his mouth . . . locked on [her] forehead." At the same time, appellant tried to push her out of the car. Martinez testified that appellant bit her more than one time during the struggle, leaving bite marks and bruises on her back, arms, and forehead right above her eyebrow. The trial court admitted photographs of Martinez's injuries which show several bruises to the eyelid and forehead, and a laceration above the eyebrow. Appellant did not say anything to Martinez during the altercation; however, Martinez testified that she felt threatened and scared by the attack. Martinez testified that the bite to her forehead left a scar. She stated that she was sore from the bite for "maybe two months, two and a half."

---

[1] Dr. Daniela Badea-Mic, the director for psychiatric triage at Christus Spohn Memorial Hospital, testified that appellant arrived at the hospital seeking mental health treatment earlier that day. Appellant's lab results from that day indicated the presence of the drug phencyclidine (PCP) in his blood.

Brenda Gonzalez, who was at a nearby house, testified she heard screaming and went outside to see what was happening. Gonzalez saw appellant on top of Martinez and saw that he was repeatedly punching and biting her. Gonzalez approached the vehicle and opened the driver's side door. Gonzalez told appellant that she had a taser, which caused appellant to grab Martinez's keys from the ignition and flee the scene.

Adelita Crosby was in her vehicle at the same intersection as Martinez. Crosby testified that she heard Martinez screaming. Crosby stated she observed Martinez bleeding heavily from her face after the assault.

Paramedic Marco Vasquez testified that when he examined Martinez at the scene, he found a laceration above her right eye.

Detective Steven Cox with the Corpus Christi Police Department observed Martinez at the scene. He testified "[t]he most prominent [injury] was her right eye [which] was almost completely swollen shut . . . . The opening of the eye was almost totally closed. There was a laceration on the top of that wound that was linear in nature. I believe it was right around the eyebrow." After being asked whether human teeth can be a deadly weapon, Detective Cox testified: "Absolutely. When applied in the proper manner in the proper place on the body with an appropriate amount of force."

Dr. Charles Close, the emergency room physician who treated Martinez, testified that Martinez had a laceration on her right eyebrow with bruising around that area. Dr. Close stated that bite wounds can cause serious infections and that an infection in the laceration over the eyebrow could move into the eye itself and require it to be removed. Dr. Close further stated, in his medical opinion, if left untreated, a human bite is capable

3

of causing serious bodily injury. He also testified to the risk for transmission of diseases, including HIV, from a human bite.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899; *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). We resolve any inconsistencies in the testimony in favor of the verdict. *Bynum v. State*, 767 S.W.2d 769, 776 (Tex. Crim. App. 1989) (en banc). Juries are permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Cada v. State*, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the

4

indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* To convict appellant of aggravated robbery under a hypothetically correct jury charge, the State was required to prove appellant: (1) in the course of committing theft and with intent to obtain or maintain control of the property; (2) intentionally or knowingly or recklessly; (3) caused bodily injury to another or threatened or placed another in fear of imminent bodily injury or death; and (4) used or exhibited a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2).

A deadly weapon is defined as "anything that in the manner of its use or intended use is capable of causing death or serious injury." *See* TEX. PENAL CODE ANN. § 1.07(a)(17) (West, Westlaw through 2015 R.S.). The State is not required to show that the "use or intended use causes death or serious bodily injury" but that the "use or intended use is *capable* of causing death or serious bodily injury." *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (emphasis added).

### III. DISCUSSION

Appellant argues that the evidence is insufficient to show he committed the offense of aggravated robbery. Specifically, he complains that the evidence fails to establish his teeth were capable of causing death or serious bodily injury because: (1) "teeth are naturally part of the human anatomy and cannot be picked up and carried, or thrown at anyone; nor are [teeth] designed, made or adapted for the purpose of inflicting bodily injury;" (2) there is no evidence that Martinez suffered any serious bodily injury; (3) "the evidence fails to establish any intent [to cause death or serious bodily injury] on the part

5

of [appellant];"[2] and (4) the State cannot rely on evidence that may "hypothetically cause serious bodily injury."

Factors that may be considered in determining whether an object is being used as a deadly weapon include:   (1) the words of the accused, such as threats; (2) the intended use of the object; (3) its size, shape, and sharpness; (4) testimony by the victim that he feared death or serious bodily injury; (5) the severity of any wounds inflicted; (6) the manner in which the assailant allegedly used the object; (7) the physical proximity of the parties; and (8) testimony as to the potential of the object for causing death or serious bodily injury.   *See Thomas v. State*, 821 S.W.2d 616, 619 (Tex. Crim. App. 1991); *Brown v. State*, 716 S.W.2d 939, 946–47 (Tex. Crim. App. 1986); *Williams v. State*, 575 S.W.2d 30, 32 (Tex. Crim. App. 1979); *Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *Magana v. State*, 230 S.W.3d 411, 414 (Tex. App.—San Antonio 2007, pet. ref'd).

The Texas Court of Criminal Appeals has stated that the most important of the above factors is the manner in which the object is used.   *See Dominique v. State*, 598 S.W.2d 285, 286 (Tex. Crim. App. 1980) (citing *Denham v. State*, 574 S.W.2d 129 (Tex. Crim. App. 1978)).   Here, appellant was on top of Martinez inside her vehicle, punching and biting her at the time of the attack.   Despite the lack of verbal threats, appellant was using his teeth in a manner that had the capability of causing substantial damage to her

---

[2] "The provision's plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury."   *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000)*.*   "The placement of the word 'capable' in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force."   *Id.*

6

eye and disfiguring her face. Specifically, the manner in which appellant was using his teeth to bite and hold onto Martinez close to her eye, while continuing to punch her and attempting to push her out of her car, suggests the capacity to cause either blindness or permanent disfigurement—loss of an eye, eyebrow, eyelid. The photographs admitted at trial show the severity and extent of the injuries, and the jury could draw on its own common sense and experience to infer the possibility that this bite could have resulted in blindness or permanent disfigurement. *See Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

Moreover, the State presented evidence regarding the capability of a human bite to cause death or serious bodily injury. Dr. Close testified regarding the possibility of infection as a result of a human bite, including the risk for transmission of diseases including HIV. *See McCain*, 22 S.W.3d at 503; *see also White v. State*, No. 02-12-00087-CR, 2013 WL 4210827, at *17 (Tex. App.—Fort Worth Aug. 15, 2013, no pet.) (mem. op., not designated for publication) (determining that a jury could have found homemade spear that was made from rolled up paper with a staple on the end was a deadly weapon when it was used to jab correctional officer in the cheek because the evidence showed that the object was capable of puncturing the skin and causing injury— from damage to an unprotected eye to infection with a terminal disease).

We conclude that a rational trier of fact could have found that appellant's teeth, considering the manner of their use during the robbery, were capable of causing serious bodily injury. *See McCain*, 22 S.W.3d at 503; *Johnson*, 364 S.W.3d at 293–94; *see also Jimenez v. State*, No. 07-04-0044-CR, 2005 WL 1743792, at *2 (Tex. App.—Amarillo,

7

July 25, 2005, pet. ref'd) (mem. op., not designated for publication) (holding that the evidence was sufficient to establish appellant's teeth were capable of causing serious bodily injury when used to bite a finger, given the injuries sustained from the bite and the treating physician's testimony that "a human bite . . . wound . . . was especially vulnerable to infection"); *Taylor v. State*, No. 05-01-00763-CR, 2002 WL 193234, at *3 (Tex. App.—Dallas, Feb. 8, 2002, no pet.) (mem. op., not designated for publication) (holding that the evidence was legally sufficient to support the deadly weapon finding where the complainant testified she spent five days in the hospital, took antibiotics to avoid infection from a human bite, and a police officer testified that a human bite can be deadly.). Therefore, we hold that the evidence is legally sufficient to support appellant's aggravated-robbery conviction. *See Johnson*, 364 S.W.3d at 293–94. We overrule appellant's issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
21st day of July, 2016.

8