

# NUMBER 13-24-00119-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ANDREW HUERTA,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

## ON APPEAL FROM THE 347TH DISTRICT COURT
## OF NUECES COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Cron**
**Memorandum Opinion by Chief Justice Tijerina**

Following a bench trial, appellant Andrew Huerta was convicted of aggravated

assault with a deadly weapon, a second-degree felony, and the trial court sentenced him

to forty-five years' confinement.[1]  *See* TEX. PENAL CODE ANN. § 22.02(a)(2). Huerta argues the evidence was insufficient to prove aggravated assault. We affirm.

## I.  BACKGROUND

At trial, Olga Mercedes Jiron testified that she was previously in a relationship with Huerta. Together they had two children, which were eleven and twelve years old at the time of trial.[2] Jiron testified that on July 4, 2023, they were barbecuing outside her home when she noticed that Huerta was acting "a little strange" and using her son's phone. After Huerta stopped using the phone, Jiron redialed the last called number. The recipient informed Jiron that Huerta was seeking synthetic marijuana. When she confronted Huerta about this, he began pacing back and forth.

Around midnight, they began popping fireworks. According to Jiron, her two children wished upon the fireworks "[t]o have a better father," which caused Huerta to become upset.

Jiron stepped inside her home and called her daughter's father to invite him over when Huerta accused her of "trying to set him up." After arguing about the situation, Jiron stepped into the restroom and smelled "synthetic [marijuana] in the restroom." As she attempted to dial out on her phone, Huerta "smack[ed] the phone out of [her] hand" and began running and "pacing back and forth" in the kitchen.

Jiron testified that as she was looking to recover her phone, Huerta returned with "the weapon," which was a "three-inch blade pocketknife." Jiron began "pleading for [her]

---

[1] Huerta's sentence was enhanced to a first-degree felony after the trial court found an enhancement paragraph to be true.

[2] Jiron had two other children from another relationship.

life" when Huerta approached her and cut her left bicep with the knife. After Huerta also cut her right bicep, he fled the scene. Jiron stated that she was crying and bleeding from the wounds this entire time. According to Jiron, the right puncture was worse because her flesh was visible, so she applied pressure to her wounds because she "was bleeding a lot." The paramedics arrived and treated her wounds. Jiron testified that after EMS treated her, her friend took her to the hospital to receive more treatment.

While Jiron was being treated at the hospital, Huerta texted her, "I already know a snitch. Just tell the boys I love them, and please just take my clothes to Grandma's." Two days after the incident, Huerta texted the following, which was admitted into evidence:

> Just want to say don't know how shit played out like this or why you lied on my name—lied, but I just want you to know that what you're doing is throwing the rest of my life down the drain . . . don't know what I did besides talk crazy because I was drunk, but you know I did not touch you. If I—if it was about you think I was texting other females, it's crazy because I always go to you every time I get out, and it's crazy you—you don't see that. Now I . . . got to pay the price or spend the rest of my life down here because you lied on me. I'm sorry if I hurt you—your feelings, and I really do love you, but this is why I never put a title on because look where—where I'm at now, and you just burn off on me trying to push charges. I just want you to please think about what you're—what you're doing. I really hope you wouldn't go through it. If it takes—if it takes for me to leave you alone, if that's what you want, I ask that you just please think about what you're doing. I just want my life back and want to spend the rest of—the rest of it here because if you go through with pushing charges, I'm done. So, once again, I honestly do not know what I did, but I'm sorry. Guess take care.

At trial, Jiron removed her jacket and showed the trial court the scars from her injuries following the incident. She further testified that she filled out an affidavit of nonprosecution because Huerta's aunt convinced her to sign it. According to Jiron, Huerta's aunt told Jiron to sign the affidavit "for [the aunt's] mother because she had just passed away," "for CPS," and "that she would tell CPS good stuff about" Jiron.

3

Officer Aaron Schmidt with the Corpus Christi Police Department testified that he responded to a physical disturbance and spoke to Jiron who appeared to be "pretty hysterical." Officer Schmidt's body camera video was admitted into evidence. In the video, Officer Schmidt communicated with Huerta on Jiron's phone. According to Officer Scmidt, Huerta told him, "I'm very f*cking far away, and you're not going to find me."

Huerta testified that he and Jiron got into an argument that night, and the last place he saw her was at Burger King where she dropped him off after her neighbors called the cops on them. Huerta stated that Jiron was not injured when she dropped him off. According to Huerta, Jiron must have gotten those injuries by cutting herself "because she mad," and "that was her way of getting [him] out of the way." Huerta stated that although he has pleaded guilty to two prior aggravated assault charges, "he did not cut her." When defense counsel asked him why the trial court should believe him, he replied, "I don't know how to answer that."

The trial court convicted him of aggravated assault with a deadly weapon and sentenced him to forty-five years' incarceration. *See id.* This appeal followed.

## II. DEADLY WEAPON

By his sole issue, Huerta argues the evidence is insufficient to prove the knife he used was a deadly weapon.

## A. Standard of Review & Applicable Law

"Deadly weapon" is defined as "anything that in the manner of its use or intended use is *capable* of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (emphasis added). To be legally sufficient to sustain a deadly weapon finding, the evidence must show that (1) the deadly weapon meets the statutory definition;

4

(2) the defendant used or exhibited the deadly weapon while committing the crime for which he was convicted; and (3) other people were actually endangered. *See Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003); *see also* TEX. PENAL CODE ANN. § 1.07(a)(17)(B). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46). The State is not required to show that the "use or intended use causes death or serious bodily injury," but that the "use or intended use is capable of causing death or serious bodily injury." *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). In reviewing the legal sufficiency of the evidence, we determine whether any rational trier of fact could have found beyond a reasonable doubt that the knife was used or exhibited as a deadly weapon. *Cates*, 102 S.W.3d at 738.

## B. Discussion

Huerta argues that the knife in question was not a "per se" deadly weapon and could not otherwise qualify as a deadly weapon because there was no evidence introduced that it "could have caused serious bodily injury or death in the manner of its use or intended use." We disagree. First, a small knife—even a pocketknife such as the knife used here—can be considered a deadly weapon as described under the penal code. *See Glover v. State*, No. PD-0514-24, 2025 WL 1119361, at *4 (Tex. Crim. App. Apr. 16, 2025) ("[T]he pocketknife was before the jury, and the jurors could see for themselves that it had a blade of between two and three inches long. A knife blade of this length has been found by this Court to be a deadly weapon under certain circumstances."); *Clark v. State*, 444 S.W.3d 671, 678 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding

5

that an open pocketknife swung at the victim's face was sufficient evidence that the knife was a deadly weapon); *Magana v. State*, 230 S.W.3d 411, 414 (Tex. App.—San Antonio 2007, pet. ref'd) (determining a small knife that caused "superficial wounds" was a deadly weapon); *Rogers v. State*, 877 S.W.2d 498, 500 (Tex. App.—Fort Worth 1994, pet. ref'd) (explaining that a small pocketknife was a deadly weapon due to its capability of causing serious bodily injury and in its manner of use); *see also Kirby v. State*, No. 13-09-00408-CR, 2010 WL 3420593, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2010, no pet.) (mem. op., not designated for publication) ("Although a knife is not a deadly weapon per se, a knife can be found to be a deadly weapon based on the nature of its use or intended use.").

Second, there was evidence describing how Jiron received her injuries. Jiron tesitifed that Huerta approached her with the knife and "cut" both biceps, that her skin was lacerated, that she applied pressure to her wounds because she was bleeding, and that he fled the scene shortly after. *See Glover*, 2025 WL 1119361, at *3 ("[A] factfinder should consider its *intended* use from the attitude indicated by the perpetrator."). A deadly weapon finding may be made, if otherwise supported by the evidence, regardless of whether any injury was inflicted. *Id.* (finding that "the defendant need not have actually inflicted harm on the victim" as long as the object was "capable" of causing injury); *see also Kirby*, 2010 WL 3420593, at *4. Photos admitted at trial showed a laceration to Jiron's arm, some blood on her shirt, and a bandaged bicep. During trial, Jiron displayed her scars to the trial court demonstrating the extent of the injuries she suffered. *See Tucker v. State*, 274 S.W.3d 688, 691–92 (Tex. Crim. App. 2008) ("Even without expert testimony

6

or a description of the weapon, the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used.").

Viewing this evidence in the light most favorable to the verdict and, deferring to the factfinder regarding the weight and credibility of the witnesses, we hold that a rational factfinder could have found beyond a reasonable doubt from the evidence presented that the knife Huerta used or exhibited was a deadly weapon. *See Cates,* 102 S.W.3d at 738. Accordingly, we overrule his sole issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
8th day of May, 2025.

7