

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00037-CR

**CHRISTOPHER WAYNE HOGAN,**

                              **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                              **Appellee**

**From the 440th District Court**
**Coryell County, Texas**
**Trial Court No. 20-26280**

## MEMORANDUM OPINION

The jury convicted Christopher Hogan of the offense of aggravated assault with a deadly weapon and assessed his punishment at fifteen years confinement.  We affirm.

### SUFFICIENCY OF THE EVIDENCE

In the first issue, Hogan argues that the evidence is legally insufficient to support his conviction for aggravated assault.  In the second issue, he argues that the evidence of a deadly weapon is insufficient.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.
>
> We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately

describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Hogan and Kayla were in a dating relationship, and Hogan lived in Kayla's home. Kayla testified that on June 18, 2020, when she returned home from work Hogan wanted her phone. She said it was not unusual for Hogan to go through her phone when she came home. Kayla gave Hogan her phone, and she went into the bedroom and fell asleep. She was awakened when Hogan came into the room screaming at her and said, "Tell me why I shouldn't smash your face in." Kayla testified that Hogan jumped on top of her and began to choke her by squeezing her neck. He eventually let go of her neck, but when she tried to get up from the bed, he pulled her down by her hair.

Kayla testified that Hogan then pulled out a knife and told her he was going to slit her throat. Kayla was in fear for her life. She was able to call Hogan's mother on the phone, and they tried to calm him down. Hogan's mother and her neighbor later arrived at Kayla's residence, and Hogan eventually left.

Hogan returned the following morning, and Kayla called the Copperas Cove Police Department. Officer Danny Belk responded to the call, and he testified that when he arrived, Kayla was frantic. Officer Belk stated that Hogan was very upset and was yelling at Kayla. Kayla told Officer Belk that she wanted Hogan to leave the house.

Officer Belk told Kayla he could not make Hogan leave the house because it was his residence, but he advised her how to begin the eviction process. Officer Belk testified that at that time he had no reason to believe an assault had occurred. He then overheard Kayla on the phone with Hogan's grandmother, and Kayla told her that Hogan had choked her. Officer Belk then pleaded with Kayla to tell him what had happened. Officer Belk testified that Kayla said she did not want to get Hogan in trouble and that she did not want Hogan to go back to jail. Officer Belk eventually left the residence.

A few days later, Kayla went to the Copperas Cove Police Department and gave a statement. Kayla also provided Officer Belk with pictures of bruises on her wrists that she said occurred during the assault. Officer Belk then obtained an arrest warrant for Hogan.

Hogan first argues that the evidence is insufficient to support his conviction for aggravated assault. He specifically argues that the jury could not have "rationally" arrived at the verdict of guilt.

A person commits the offense of aggravated assault with a deadly weapon if he he: (1) intentionally, knowingly, or recklessly caused bodily injury to a person, and (2) used or exhibited a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. §22.01 (a) & § 22.02 (a) (West). Bodily injury is defined as "means physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07 (a) (8) (West). This definition is purposefully broad and seems to encompass even relatively

minor physical contacts so long as they constitute more than mere offensive touching. *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989). Any physical pain, however minor, will suffice to establish bodily injury. *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012).

Kayla testified that Hogan put both of his hands around her neck and squeezed her neck very hard. Kayla said that it left red marks on her neck, but no bruising. Kayla further testified that Hogan pulled her down by her hair. Hogan threatened to smash in her face, and he took out a knife and threatened to slit her throat. Kayla had pictures of bruises on her wrists that she says occurred during the assault.

The State also introduced messages between Kayla and Hogan in which Kayla told Hogan "you could have killed me," and he responded, "No. Or I would have. I stopped." The jury also saw the video from Officer Belk's car. In that video, Kayla can be heard telling Hogan's grandmother that Hogan choked her. A jury could have rationally found that Hogan intentionally, knowingly, or recklessly caused bodily injury to Kayla.

Hogan next contends that there is insufficient evidence that he used or exhibited a deadly weapon. The Texas Penal Code defines deadly weapon as, "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07 (a) (17) (B) (West). Serious bodily injury is defined as, "bodily injury that creates a substantial risk of death or that causes death, serious

permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07 (a) (46) (West).

While it is well settled that a knife is not a deadly weapon per se, it can be a deadly weapon if the person using it intends to use it in a way in which it would be capable of causing death or serious bodily injury. *Williams v. State*, 575 S.W.2d 30, 32 (Tex. Crim. App. 1979); *Magana v. State*, 230 S.W.3d 411, 414 (Tex. App. —San Antonio 2007, pet. ref'd). When no actual injury is sustained by the victim, the prosecution must introduce evidence of other factors to establish that the knife is a deadly weapon. *Magana v. State*, 230 S.W.3d at 414. The factors to consider include: (1) the size, shape, and sharpness of the knife, (2) the manner of its use or intended use, (3) the nature or existence of inflicted wounds, (4) evidence of the knife's life-threatening capabilities, (5) the physical proximity between the victim and the knife and (6) any words spoken by the one using the knife. *Id*.

The State does not have to introduce the knife into evidence to prove the knife was a deadly weapon. *Magana v. State*, 230 S.W.3d at 414. Expert testimony is not required to prove that an object is a deadly weapon. *Brickley v. State*, 623 S.W.3d 68, 76 (Tex. App. — Austin 2021, pet. ref'd). The State is not required to prove that the actor actually intended death or serious bodily injury. *Id*. An object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. *Id*.

Kayla did not suffer any injuries from the knife. Although the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used, wounds need not be inflicted before an object can be determined to be a deadly weapon. *See Tucker v. State*, 274 S.W.3d 688, 691-92 (Tex. Crim. App. 2008); *Brickley v. State*, 623 S.W.3d at 76. Kayla testified that the knife had a black handle, was wider than a pocketknife, and that it got "got wider at the tip." Kayla stated that Hogan used the knife to scratch off lottery tickets. Kayla further testified that Hogan intended for her to see the knife and feel threatened by the knife. Hogan was standing over Kayla while holding the knife. Hogan told Kayla that he was going to slit her throat.

The jury could have rationally found that Hogan used or intended to use the knife in a way in which it would be capable of causing death or serious bodily injury. We find that the evidence is sufficient to support the jury's finding that he used or exhibited a deadly weapon during the assault. We overrule the first and second issues on appeal.

CONCLUSION

We affirm the trial court's judgment.


STEVE SMITH
Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
Affirmed
Opinion delivered and filed December 28, 2022
Do not publish
[CR25]

